Charles and Michelle MIKOLAJCZYK, Individually and as Next Friends for Charles Mikolajczyk, III, Appellants,

v.

Dr. Hernan SALAZAR, Appellee.

No. 04–97–00745–CV.

Court of Appeals of Texas, San Antonio.

March 18, 1998.

John M. Henderson, Kevin B. Miller, Miller & Henderson, San Antonio, for Appellants.

James L. Bruner, Law Offices of James L. Bruner, San Antonio, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and GREEN, JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

This is an appeal from a summary judgment granted to appellee, Dr. Salazar, in a medical malpractice case. Appellants, the Mikolajczyks, individually and on behalf of their son, claim that the trial court erred in granting summary judgment to Dr. Salazar and in overruling their objections to Salazar's summary judgment evidence. We agree and reverse the judgment.

### FACTS AND PROCEDURAL HISTORY

In 1992, Michelle Mikolajczyk saw Dr. Salazar after she got a positive result on a home pregnancy test. According to Michelle's summary judgment affidavit, she had not been taking birth control pills prior to the time she got the positive result. Michelle got Dr. Salazar's name from the phone book.

During Michelle's visit, Dr. Salazar performed two tests: a urine pregnancy test and a sonogram. According to Salazar, both tests showed negative for pregnancy. Salazar prescribed the hormones Provera, Estrace, and Orthotricycline to induce Michele's period and also gave her an undated prescription for birth control pills.[1]

About ten days after she saw Dr. Salazar (and after she took the prescribed hormones), Michelle's period still had not started. She saw another doctor, who performed a blood test for pregnancy. This test was positive. About nine months later, Michelle gave birth to a baby boy, who was diagnosed with testicular cancer. The disease eventually led to surgery to have one of the child's testicles removed.

The Mikolajczyks sued Dr. Salazar for medical malpractice, claiming that he had violated established standards of care by prescribing doses of hormones without definitively ruling out the possibility that Michelle was pregnant. Dr. Salazar filed a general denial and then moved for summary judgment. His sole ground for summary judg-

---

1. There is a factual dispute as to Dr. Salazar's instructions and intent in prescribing the medication. Dr. Salazar's summary judgment affidavit states that he gave Michelle the "progestational agent (provera 10 mg) to initiate withdrawal bleeding" and, in the next paragraph, states that he "also" gave Michelle an "undated prescription for birth control pills." Michelle's affidavit also states that she was given hormones to "bring my period back to regularity." The affidavit indicates that the doctor told Michelle not to take the birth control pills until after she revisited the doctor in two weeks. However, the affidavit does not appear to claim that the same warning was given with the prescription for the provera.

ment was that proximate cause was not established because Michelle's refusal to return for additional tests could have caused the injury. Dr. Salazar supported his motion for summary judgment with his own affidavit and with the affidavit of a woman who worked with him, Jackie Flores. The Mikolajczyks responded with affidavits from Michelle and from a Missouri physician. They also objected to the affidavits submitted by Dr. Salazar as conclusory and failing to establish a relevant standard of care. The trial court granted summary judgment.

## STANDARD OF REVIEW

 To prevail on a motion for summary judgment, the movant must show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–9 (Tex. 1985). For a defendant to make this showing, he or she must disprove at least one of the essential elements of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). In a medical malpractice action, the defendant must negate one or more of the following elements of a plaintiff's cause of action: (1) the duty of the physician to act according to a certain standard; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach and the injury. *Silvas v. Ghiatas*, 954 S.W.2d 50, 52 (Tex.App.—San Antonio 1997, writ denied). To support summary judgment in a medical malpractice suit, a physician's expert testimony must identify the relevant standard of care, establish that the expert is familiar with the standard, and demonstrate that the medical care provided complied with the standard. *Id.*

 If the movant's summary judgment affidavit successfully disproves one or more of the essential elements of the plaintiff's claim, the burden then shifts to the plaintiff to produce competent medical testimony that raises a fact issue with regard to negligence. *Id.* at 53.

All evidence favoring the nonmovant will be taken as true, and all reasonable inferences will be indulged in favor of the nonmovant. *Nixon*, 690 S.W.2d at 549.

With these standards in mind, we turn to the affidavits offered in support of the motion for summary judgment. If insufficient, no burden shifts to the plaintiffs, and summary judgment must fail. We find that the affidavits are insufficient.

## SUMMARY JUDGMENT PROOF: THE AFFIDAVITS

### Dr. Salazar

In his affidavit, Dr. Salazar states that he is a doctor of osteopathy and is "engaged in the practice of termination of pregnancies" and that he is "familiar with the standard of care required *for those procedures* ... and the complications that may arise from them" (emphasis added). Dr. Salazar discusses the implications of a skipped period and details testing designed to rule out pregnancy. He alleges that the standard of care for skipped periods was met. He claims that, upon getting false results from the urine test and pelvic sonogram, he told Michelle that she might still be pregnant.[2] According to Dr. Salazar, Michelle desperately did not want to be pregnant and refused further tests to rule out pregnancy, because she could not afford them. According to Dr. Salazar, "she said she would rather just have an abortion."

Dr. Salazar claims that he told Michelle to wait two weeks and then to return for a repeat sonogram at no cost to her. Michelle then asked Dr. Salazar what would be required to re-start her periods if she was not pregnant. At that point, Michelle "demanded" to be treated for a skipped period. Dr. Salazar's affidavit then states, *"I said I would treat her but that if no bleeding occurred within two weeks she would have to have the abortion or have the trans-vaginal sonogram and the serum pregnancy test"* (emphasis added). Dr. Salazar said he told Michelle specifically to return in two weeks.

---

**2.** This allegation highlights a fact dispute between the parties; Michelle claims Dr. Salazar assured her that she could not be pregnant and that she had gotten a false positive on the home test.

Dr. Salazar also states that he gave Michelle an undated prescription for birth control pills because she said she had been having trouble with the pills she'd been taking. Dr. Salazar states that he told her not to take the pills until a definite determination of pregnancy could be made and, if she was pregnant, until after an abortion could be performed.

### Jackie Flores

Flores states that she has been an employee of Dr. Salazar's All Women's Medical Center since 1989. She states that she performed the in-office pregnancy tests on Michelle that turned up negative. She states that Michelle was adamant that she did not want to be pregnant and that, if she was pregnant, she wanted an abortion. According to Flores, Michelle insisted that Dr. Salazar give her *something to make her start her period.*

### DISCUSSION

■ Dr. Salazar offers his own affidavit as expert summary judgment evidence. An interested expert's affidavit may form the basis for summary judgment if it is uncontroverted and "clear, positive and direct, otherwise credible and free from contradiction and inconsistencies, and could have been readily controverted." TEX.R. CIV. P. 166a(c). The interested expert's testimony, like all expert affidavits, must "identify the relevant standard of care, establish that the expert is familiar with that standard, and demonstrate that the medical care provided complied with the standard of care." *Silvas*, 954 S.W.2d at 53. We find that Dr. Salazar's affidavit does not meet these criteria.

■ Dr. Salazar does not state that he is familiar with the *relevant* standard of care in this case. Instead, he states that he is familiar with the medical practices surrounding the termination of pregnancies. This flaw goes to the heart of the factual dispute between the parties. Michelle asserts that she did not see Dr. Salazar in order to have a possible pregnancy terminated. She sought verification of a home pregnancy test and then some explanation of why her period had not started. Since we are to assume that her allegations are true, then the standard of care for termination of pregnancies is not relevant here. In fact, it might be appropriate for a doctor to give a woman who wants an early abortion high doses of hormones. However, Michelle has stated that she was not interested in an abortion.[3] Since there is a central fact dispute over what services Michelle sought from Dr. Salazar, an affidavit asserting his expertise in giving abortions cannot be sufficient.

■ In addition, Dr. Salazar's affidavit does not negate the element of the Mikolajczyks's claim specifically challenged by his motion for summary judgment. Causation was the only element relied upon in that motion.[4] The grounds for a motion for summary judgment must be expressly presented in the motion; it is not sufficient that the grounds might be gleaned from the summary judgment evidence. *Whittley v. Heston*, 954 S.W.2d 119, 121 (Tex.App.—San Antonio 1997, n.w.h.). Our consideration is limited to a consideration of whether proximate cause was resolved against the Mikolajcyks as a matter of law. We find that it was not.

■ Dr. Salazar's affidavit does not allege that the drugs administered to Michelle would not cause the injury to the child or that other factors might have caused the injury. The motion for summary judgment makes the latter claim, but the affidavit clearly makes neither. While Dr. Salazar

---

3. Flores's affidavit suffers from a similar defect. In that affidavit, Flores states, "[Michelle] insisted that there had to be a way to bring down her period now without having to wait the two weeks. She felt that having her period would eliminate the need for an abortion."

4. In oral argument, the Mikolajcyks's attorney stated that, for the purposes of this appeal, the appellants would construe the motion to be an attack on all the negligence elements. We find, however, that the motion attacks only the causation element. The motion clearly states, "Defendant is entitled to summary judgment as a matter of law because Plaintiff[s] are unable to establish the element of proximate cause." The motion then states that causation was not proven because the injury could have been caused by Michelle's failure to return to Dr. Salazar for treatment.

claims in his affidavit that Michelle was using birth control pills at the time she got pregnant and that she did not return to his office after two weeks as he had requested, he does not offer either of these allegations as possible causes of the child's cancer. He never suggests that the administration of menstruation-inducing hormones would not cause cancer in a developing infant.

Dr. Salazar is correct in arguing in his brief that "[a] Defendant-movant is entitled to a summary judgment if he establishes, as a matter of law, that at least one element of the plaintiff's cause of action does not exist." However, he misconstrues the law when he then states, "In this case, *Plaintiff has failed to establish*, by competent evidence, a failure to meet the standard of care ... or a causal connection between the alleged breach of the standard of care and the injury" (emphasis added).

Dr. Salazar has misstated the Mikolajcyks's burden. *If* the defendant is able to negate an element of the plaintiff's claim in a competent affidavit, then the plaintiff must come forward with controverting evidence. However, by wholly mischaracterizing Michelle's complaint and, thus, the relevant standard of care, Dr. Salazar has failed to negate anything. *His* summary judgment burden has not been met, and summary judgment was improper. *See Lopez v. Carrillo*, 940 S.W.2d 232, 234 (Tex.App.—San Antonio 1997, writ denied); *see also Martin v. Petta*, 694 S.W.2d 233, 238 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.) (where summary judgment affidavits were inadmissible, summary judgment for defendant was improper); *Coan v. Winters*, 646 S.W.2d 655, 659 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.) (plaintiff not required to put on summary judgment evidence because defendant's burden was not met).

### CONCLUSION

Dr. Salazar's affidavit is insufficient under the law governing the affidavits of experts in support of summary judgment. Most serious among its defects is its failure to establish the doctor's familiarity with the relevant standard of care for the treatment of women who believe they may be pregnant. In addi-

tion, Dr. Salazar failed to negate the one element of the Mikolajczyks's cause of action upon which he based his motion for summary judgment—causation. For these reasons, we find that the order granting summary judgment was inappropriate, and we remand the case for trial.