**John KIMBER and Shawn Kimber, Individually, and as next friends of Julia Kimber, a Minor, Appellants,**

v.

**E.B. SIDERIS, M. D., Appellee.**

**No. 07–98–0204–CV.**

Court of Appeals of Texas, Amarillo.

Sept. 8, 1999.

Order Overruling Rehearing Nov. 23, 1999.

---

Joe L. Lovell and Tim D. Newsom, Lovell Lovell & Newsom LLP, Warren L. Clark, Attorney at Law, Amarillo, for appellant.

Jim Hund, Murchison Hund & Harriger LLP, Lubbock, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

DON H. REAVIS, Justice.

By this appeal of their medical malpractice action, appellants John Kimber and Shawn Kimber, individually, and as next friends of Julia Kimber, a minor (the Kimbers) challenge the trial court's order granting summary judgment in favor of Dr. E.B. Sideris that they recover nothing on their action against Dr. Sideris. By one issue and three sub-issues, the Kimbers request that we determine whether the trial court erred in granting the motion for summary judgment of Dr. Sideris because genuine issues of material fact exist concerning (a) his duty as Julia's pediatric cardiologist as a participant in the July 9 surgery and as the referring physician who selected the surgeon and hospital to perform the surgery; (b) whether his acts and omissions before or during the July 9 surgery fell below the standard of care; and (c) whether his acts and omissions contributed to cause Julia's damages. Based upon the rationale expressed herein, we must reverse.

This appeal arises from a medical malpractice and products liability claim brought by the Kimbers against Dr. Sideris and others[1] as a result of events that occurred between July 6, 1995 and July 9, 1995, which allegedly caused paraplegia to the then 13–year–old Julia. Julia was born with a heart condition known as coarctation of the aorta which results in high blood pressure in the upper portion of the body and low blood pressure in the lower portion of the body. Doctor Sideris, Julia's pediatric cardiologist since she was a small child, performed an angiogram[2] in anticipation of surgery to correct her coarctation. The first of two surgeries, both performed by Dr. John Baay, a heart surgeon recommended by Dr. Sideris, occurred on July 6, 1995. Early on the morning of July 9, 1995, while Julia was not in the Intensive Care Unite (ICU), but under general floor care, she experienced a respiratory episode requiring her transfer to ICU, where she was placed on a ventilator. Later that day, concerned that a significant gradient in Julia's blood pressure from the upper to the lower extremity of her body had caused her respiratory problems, Dr. Sideris and Dr. Baay agreed that a second surgery was necessary to correct the gradient to be able to remove Julia from the ventilator.

According to the summary judgment evidence, Dr. Sideris was present in the operating suite during the second surgery on July 9. Doctor Baay, assisted by Dr. Masoud A. Alzeerah, revised the problem area of the aorta with a large patch graft. However, because the large patch did not correct the gradient, Dr. Baay utilized two additional patches which required with each attempt the (1) cross-clamping of the aorta to stop blood flow and permit Dr. Baay to see what he was doing, (2) opening the patch, (3) adding another piece, (4) suturing the patch, and (5) removing the clamps. Before the surgery was complet-

ed, Julia suffered cardiac arrest from an air embolus, and after being resuscitated, Dr. Baay decided to terminate further surgical procedure on the aorta and closed Julia's chest. Following this second surgery, it was discovered that Julia was paralyzed below her waist.

As a result of the events leading to Julia's paraplegia, the Kimbers filed suit against numerous defendants, including Dr. Sideris, whom they allege was negligent by eleven specific acts or omissions which proximately caused Julia's injuries and damages. In response to the foregoing allegations, Dr. Sideris filed by one instrument, a traditional motion for summary judgment pursuant to Rule 166a(c) of the Texas Rules of Civil Procedure, as well as a no-evidence motion for summary judgment in accordance with Rule 166a(i). Following a hearing on the motions held on May 20, 1998, the trial court announced that it would read the motions and rule on them later. Then, on May 22, 1998, the trial court signed its order granting summary judgment in favor of Dr. Sideris and severing the claims against the other defendants into a separate cause of action. Because the order does not specify whether judgment was granted based on Dr. Sideris's traditional or no-evidence motion, we will review the Kimbers' issues under both established standards of review beginning with the traditional motion.

### Summary Judgment Standard of Review

#### Rule 166a(c)

In reviewing a summary judgment, this Court must apply the standards established in *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985), which are:

1. The movant for summary judgment has the burden of showing that there is

---

1. The remaining claims of the Kimbers against other defendants were severed from this cause and made the subject of a separate cause not pertinent to this appeal.

2. Sometimes referred to as an aortogram in the record.

no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). A movant must either prove all essential elements of his claim, *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986), or negate at least one essential element of the non-movant's cause of action. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); *Barbouti v. Hearst Corp.,* 927 S.W.2d 37, 64 (Tex.App.—Houston [1st Dist.] 1996, writ denied). Issues which the non-movant contends preclude the granting of a summary judgment must be expressly presented to the trial court by written answer or other written response to the motion and not by mere reference to summary judgment evidence. *McConnell v. Southside School Dist.,* 858 S.W.2d 337, 341 (Tex.1993). Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal. Tex.R. Civ. P. 166a(c). Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *Casso v. Brand,* 776 S.W.2d 551, 553 (Tex.1989). When a summary judgment does not specify or state the grounds relied on, the summary judg-ment will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Insurance Co. of N. Am. v. Security Ins.,* 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ).

### No–Evidence Summary Judgment Standard of Review

#### Rule 166a(i)

Rule 166a(i) entitled "No–Evidence Motion," provides that a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. When a summary judgment does not specify or state the grounds relied on, it will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *Carr,* 776 S.W.2d at 569; *Insurance Co. of N. Am.,* 790 S.W.2d at 410. Where a motion is presented under Rule 166a(i) asserting there is no evidence of one or more essential elements of the non-movant's claims upon which the non-movant would have the burden of proof at trial, the movant does not bear the burden of establishing each element of its own claim or defense as under subparagraph (a) or (b). Rather, although the non-moving party is not required to marshal its proof, it must present evidence that raises a genuine fact issue on the challenged elements. *See* Tex.R. Civ. P. 166a, Notes and Comments.

Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Roth v. FFP Operating Partners,* 994 S.W.2d 190, 195 (Tex.App.—Amarillo 1999, pet. denied); *Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 70 (Tex.App.—Austin 1998, no pet.). Thus, our task as an appellate court is to ascertain whether the non-movant produced any

evidence of probative force to raise a fact issue on the material questions presented. *Id.* We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Fiesta Mart, Inc.*, 979 S.W.2d at 70–71. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711.

## Analysis

By one issue,[3] followed by three sub-issues, the Kimbers request that we determine whether the trial court erred in granting summary judgment in favor of Dr. Sideris and by sub-issue (a), ask in part whether genuine issues of material fact exist concerning Dr. Sideris's duty as Julia's pediatric cardiologist as a participant in the July 9 surgery. Because we agree with the Kimbers' contention that a genuine issue of material fact must be resolved as to whether Dr. Sideris's presence during the July 9 surgery was as a mere observer or whether he assumed a duty to act pursuant to the appropriate standard of care, we reverse the summary judgment. Because the Kimbers acknowledge in their brief that after the July 6 surgery Julia "was recovering well and had full use of her legs," we limit our review to the following five specific allegations of negligence as alleged by the Kimbers and to which Dr. Sideris raised no duty grounds in his motions regarding his participation in the July 9 surgery:

(a) failing to properly correct Julia Kimber's coarctation;

* * *

(f) failing to test Julia Kimber's collateral circulation before allowing cross-clamps and incisions on her aorta;

(g) failing to test Julia Kimber's lower body temperature after applying cross-clamps and before incisions were made on her aorta;

(i) undertaking surgery on Julia Kimber's aorta, absent additional protective measure, when her lower body pressure was too low to safely perfuse her spinal cord; and

(j) failing to institute protective measures to protect against ischemic damage to Miss Kimber's spinal cord, specifically including, without limitation, cardiopulmonary bypass and/or hypothermia.

By his motions for summary judgment, Dr. Sideris raised the following grounds in response to the foregoing allegations:

(a) he had no legal duty to correct Julia's coarctation;

* * *

■ (f) he had no legal duty to test Julia's collateral circulation prior to the July 9, 1995 surgery;

(g) he had no legal duty to test Julia's lower body pressure after cross-clamps were applied to her aorta but before incisions were made;

(i) he had no legal duty to employ protective measures regarding Julia's lower body pressure during the July 9, 1995 surgery; and

(j) he had no legal duty to institute protective measures against ischemic damage to Julia's spinal cord.

Pursuant to his traditional summary judgment motion, Dr. Sideris, as defendant, was required to negate one or more of the following elements of the Kimbers' cause of action: (1) the duty of the physician to act according to a certain standard of care;

---

**3.** *See Malooly Brothers, Inc. v. Napier*, 461  S.W.2d 119, 121 (Tex.1970).

(2) a breach of that standard; (3) an injury; and (4) a causal connection between the breach and the injury. *Mikolajczyk v. Salazar*, 966 S.W.2d 711, 714 (Tex.App.—San Antonio 1998, no pet.); *Silvas v. Ghiatas*, 954 S.W.2d 50, 52 (Tex.App.—San Antonio 1997, writ denied).

■ Under his no-evidence motion for summary judgment, Dr. Sideris, as the movant, asserted that there was no evidence of one or more essential elements of the Kimbers' claims upon which they would have the burden of proof at trial, Tex.R. Civ. P. 166a(i), thus shifting the burden to the Kimbers to present more than a scintilla of evidence of probative force to raise a fact issue on the material questions presented. *Jackson*, 979 S.W.2d at 70. The threshold question, whether a legal duty existed under the facts presented in the instant case, is a question of law, *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994), which must be decided before the issue of standard of care arises. *Salas v. Gamboa*, 760 S.W.2d 838, 840 (Tex.App.—San Antonio 1988, no writ). However, when the evidence does not conclusively establish the pertinent facts or the reasonable inferences to be drawn therefrom, the issue becomes one for the jury. *Mitchell v. Missouri–Kansas–Texas R. Co.*, 786 S.W.2d 659, 662 (Tex.1990), *cert. denied*, 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990).

■ Considering both standards of review, we hold that the summary judgment evidence presented raised a genuine issue of material fact regarding the role of Dr. Sideris, although a non-surgeon, during the July 9 surgery. By his deposition testimony, Dr. Sideris characterized his presence during the surgery as that of an observer and a messenger who would report to Julia's parents on the progress of the surgery. He also admitted that occasionally, he would "squeeze in" around the sterile field to observe the surgery and would be ousted at that point. By their depositions, Dr. Baay and the anesthesiologist also described Dr. Sideris's involvement during the surgery as that of an observer. However, by his deposition, Dr. Alzeerah, the assisting surgeon, testified as follows regarding Dr. Sideris's role during the July 9 surgery:

Q. Was Dr. Sideris there during the entire surgery?

A. Yes, he was.

Q. Where, physically, was he located?

A. Right behind Dr. Baay, almost in the sterile field, which he's not supposed to be there.

Q. He was there close enough where he could—

A. Correct.

Q. —see pretty much what Dr. Baay was doing?

A. Correct.

Q. I take it by what you've said that you learned that Dr. Baay was not satisfied with the patch and thought it needed enlarging from something he said?

A. Well, from something Dr. Sideris said.

Q. Okay. They were conversing throughout the surgery?

A. That's correct. I do not recall the exact details, but that was the whole conversation all about [sic], that the patch is not—is not big enough; let's make it bigger and bigger and bigger and bigger.

\* \* \*

Q. Dr. Sideris was there, but he didn't have anything to do with actually being involved in the—

A. Right.

Q. —surgery, right?

A. But he was very critical, so—

Q. When you say critical, tell me how.

A. Well, after, for instance, Dr. Baay finished the patch and looked at it, before even Dr. Baay could express his opinion, Dr. Sideris was already saying, it's no good; let's do it again; it's no

good; let's do it again. I heard this many times.

Q. And is that what Dr. Baay did?

A. Yes.

Q. Do you recall how many times he— Dr. Baay did more because Dr. Sideris said, it's no good, let's do it again?

A. At least three times.

Additionally, Dr. Dan G. McNamara, a pediatric cardiologist who testified by deposition as an expert for the Kimbers, confirmed that although a pediatric cardiologist has responsibilities separate and apart from those of a heart surgeon, at times there may be an area of overlap. He also testified regarding a letter he wrote expressing his opinions in response to questions from counsel for the Kimbers. He based his opinions on various reports from Julia's surgeries and some of the depositions in the record. Relying on Dr. Alzeerah's deposition, Dr. McNamara concluded that Dr. Sideris was "directing some of the decisions" during the July 9 surgery. However, Dr. McNamara conceded that Dr. Sideris may have found it necessary to insist on enlarging the patch because Dr. Baay had not frequently performed coarctations.

Under these novel and conflicting facts regarding Dr. Sideris's role during the second surgery, a factfinder could determine that Dr. Sideris, a non-surgeon, was merely an observer; however, a factfinder could also determine that Dr. Sideris voluntarily undertook a duty or an affirmative course of action (*i.e.,* directing some of the decisions during surgery) defining his role as a participant. A finding that Dr. Sideris was more than an observer during surgery and participated in the decision making during the second surgery would be sufficient to support a duty to exercise reasonable care. *Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116, 119 (Tex.1976); *Klager v. Worthing,* 966 S.W.2d 77, 83 (Tex.App.— San Antonio 1996), *modified,* 957 S.W.2d 852 (Tex.App.—San Antonio 1996, writ denied); *cf. McMillin v. L.D.L.R.,* 645 S.W.2d 836, 840 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.).

In applying the traditional summary judgment standard of review and accepting as true evidence favorable to the Kimbers and resolving doubts from every reasonable inference in their favor, we hold that a disputed genuine issue of material fact regarding whether Dr. Sideris assumed a duty during the July 9 surgery exists. Also, in applying the no-evidence summary judgment standard of review, we find that the Kimbers presented more than a scintilla of probative evidence to raise a genuine issue of material fact regarding whether Dr. Sideris assumed a duty during the July 9 surgery. Therefore, we conclude that summary judgment in favor of Dr. Sideris that the Kimbers take nothing was improvidently granted. Sub-issue (a) is sustained insofar as it relates to Dr. Sideris's participation in the July 9 surgery. Our sustention of this sub-issue as to the five specific allegations of negligence noted above and reversal of the summary judgment on the no duty grounds presented in Dr. Sideris's motions pretermits a discussion of the other elements raised by Dr. Sideris in his motions and remaining sub-issues.

Accordingly, the judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

## ON MOTION FOR REHEARING

By his motion for rehearing, Dr. Sideris contends this Court erred by reversing the summary judgment that the Kimbers take nothing against him. Remaining convinced that our disposition of the appeal was proper, the motion for rehearing will be overruled with the following comment.

■ Relying on *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625–26 (Tex. 1996), Dr. Sideris contends we should consider all grounds he presented in his motion for summary judgment. We disagree. In *Cincinnati,* the plaintiff sought to re-

cover on three causes of action, to-wit: violations of the Deceptive Trade Practices–Consumer Protection Act,[1] negligence, and breach of good faith and fair dealing. Here, however, although the Kimbers alleged multiple claims, medical malpractice was the only cause of action asserted. Further, *Cincinnati* is distinguishable because the trial court specifically ruled on all the summary judgment grounds presented, whereas the trial court in the Kimber lawsuit did not state the specific grounds relied on in granting summary judgment in favor of Dr. Sideris. Also, the *Cincinnati* Court reiterated the rule that a court of appeals should consider those grounds ruled on by the trial court which are necessary for final disposition of the appeal. *See* Tex.R.App. P. 47.1. Although a court of appeals may consider other grounds in the interest of judicial economy, we are not required to consider grounds not necessary for final disposition of the appeal. *Cincinnati*, 927 S.W.2d at 626–27. Because a fact issue as to even one of the allegations of malpractice is sufficient to defeat summary judgment, *see Silvas v. Ghiatas*, 954 S.W.2d 50, 54 (Tex. App.—San Antonio 1997, pet. denied), our consideration of other issues raised by Dr. Sideris is unnecessary to final disposition of this appeal.

Accordingly, the motion for rehearing is overruled.

1. Tex. Bus. & Com.Code Annotated §§ 17.41—17.826 (Vernon 1987 & Pamph. Supp.2000).