NO. 07-00-0407-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 23, 2001

______________________________

THE CITY OF PAMPA, TEXAS, APPELLANT

V.

PAMPA PROPERTIES CORPORATION, APPELLEE

_________________________________

FROM THE 223
RD
 DISTRICT COURT OF GRAY COUNTY;

NO. 31062; HONORABLE LEE WATERS, JUDGE

_______________________________

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

In this appeal, appellant the City of Pampa, Texas (the City) challenges the trial court’s denial of its motion seeking a take-nothing summary judgment in a suit in which appellee Pampa Properties Corporation seeks recovery for damages to a building owned by it allegedly resulting from the demolition of adjacent concrete pavement.  For reasons we later recount, we reverse the judgment of the trial court and render judgment in favor of the City.

Initially, we note that although the trial court’s judgment is interlocutory, the City is entitled to an accelerated interlocutory appeal because it is based upon an assertion of immunity by a political subdivision of the state.  
See
 Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) (Vernon Supp. 2001).

On March 14, 1995, the City and E.D. Baker Corporation (Baker) entered into a contract for Baker to perform road construction in downtown Pampa.  Under the contract, old concrete surfaces were to be broken into pieces no larger than two feet by two feet.  Appellee owns the Hughes Building, which is located on Kingsmill Avenue in downtown Pampa, one of the streets upon which the concrete demolition work was to be done.  In August 1996, pieces of the masonry veneer on the building separated and fell to the ground.  Appellee contends that the damage was a result of the demolition of the concrete pavement.

In its first issue, the City argues it is entitled to sovereign immunity because it is undisputed that a city employee did not cause the alleged damages.  In its summary judgment motion, the City asserted there was no evidence that any City employee operated the crane doing the demolition nor that the City retained the right to control the details of the work to be performed by Baker.

Generally, in order to be entitled to summary judgment, a movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  
Nixon v. Mr. Property Management Co.
, 690 S.W.2d 546, 548-49 (Tex. 1985).  However, Texas Rule of Civil Procedure 166a(i) provides that a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense upon which an adverse party would have the burden of proof at trial. When such a motion is filed, the movant does not bear the burden of establishing each element of its defense as under subparagraph (a) or (b).  Rather, although the non-moving party is not required to marshal its proof, it must present evidence that raises a genuine fact issue on the challenged elements.  
See 
Tex. R. Civ. P. 166a, Notes and Comments
; Kimber v. Sideris
, 8 S.W.3d 672, 675-76 (Tex.App.--Amarillo 1999, no pet.).  Additionally, because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing it as we apply in reviewing a directed verdict.  
Kimber
, 8 S.W.3d at 675-76.  Thus, our task as an appellate court is to ascertain if the non-movant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented.  
Id
.

Street construction and design is one of the governmental functions of a municipality.  Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(3) (Vernon Supp. 2001).  A governmental unit is liable for property damage proximately caused by the negligence of an employee acting within the scope of his employment if the damages arise from the operation or use of a motor-driven vehicle or equipment, and the employee would be personally liable according to Texas law.  
Id. 
§ 101.021 (1)(Vernon 1997)
.
  However, under the Texas Tort Claims Act, the definition of an “employee” does not include an independent contractor or an employee of an independent contractor or a person who performs tasks the details of which the governmental unit has no right to control.  
Id. 
§ 101.001(2) (Vernon
 
Supp. 2001).

The summary judgment evidence conclusively establishes that the person operating the demolition equipment was an employee of Baker.  Even so, appellee asserts that the evidence shows a genuine fact issue as to whether the means, manner, and the details of performance were controlled by the City.

A party can prove a “right to control” in two ways; namely, 1) by evidence of a contractual agreement which explicitly assigned the owner the right of control and, in the absence of such a contractual agreement, 2) by evidence that the owner actually exercised control over the job.  
Coastal Marine Service of Texas, Inc. v. Lawrence
, 988 S.W.2d 223, 226 (Tex. 1999); 
Farrell v. Greater Houston Transp. Co., 
908 S.W.2d 1, 3 (Tex.App.--Houston [1
st
 Dist.] 1995, writ denied).    

With regard to the first method, the contract between the City and Baker provided “CONTRACTOR shall be solely responsible for the means, methods, techniques, sequences or procedures of construction .  . . .”  It is apparent, then, that the City did not have any written contractual right to control the demolition activities.  We must make an  examination to see if there is any evidence that the City actually exercised control over the work.

Appellee contends that there is evidence that Lynn Colville, who was employed by the City as a project inspector under a separate contract, controlled Baker’s work activities.  Colville’s contract required him to “perform all necessary field inspections during the course of the Phase II construction to insure Contractor’s compliance with the plans and specifications.”  He was to furnish his own vehicle and supplies and to file daily inspection reports.  Colville was also to determine the manner and method by which his inspection services would be performed, with the City only interested in the results.  The contract specifically stated that it was the intent of the parties for Colville to be an independent contractor.

Appellee’s summary judgment evidence consisted of the affidavits and deposition testimony of Baker’s owner, Donnie Cornell, and Baker employees Charlie Harvey, Charles Martin and Sammy Vaughn.  Cornell testified in his deposition that he selected the breaking ball method for demolition of the concrete and the people to perform the job.  Although there were other methods, he felt the breaking ball was the only economically feasible method to do that job and meet the two foot by two foot requirement for the size of concrete.  He testified that his employee, Greg Franklin, was operating the breaking ball in front of the Hughes Building.

Cornell further averred that his employees complained a number of times that Colville was directing them in performing the job.  When pressed for details, Cornell relayed incidents where Colville indicated he did not want a particular employee of Baker doing clean-up work, Colville changed his mind on the type of fly ash base he wanted to use to backfill a line, and Colville refused to do a final inspection with Cornell.  He also complained about an instance in which Colville required Baker to pull up more of the street than Cornell thought was necessary to perform a density test.

Although Cornell indicated that he asked the City  to tell Colville to stop directing his employees, Cornell admitted that he knew he had a right to control the details of the task of operating the crane and wrecking ball used in the demolition of the concrete.  He claimed that the City controlled the amount of energy that went into that task, but clarified that statement by indicating that he was talking about the size of the broken up concrete.  That is, when the concrete was not broken up to Colville’s satisfaction, Baker sometimes took a hydraulic hammer to the landfill.  Colville would also indicate by pointing a finger or by spray paint that a chunk of concrete was not broken up to the desired size.  Cornell stated that the only thing Colville did with respect to the wrecking ball operation was to tell Baker which concrete chunks needed to be broken up into smaller pieces.

Charlie Harvey, who sometimes operated the crane, averred in his affidavit:

I had contact with Lynn Colville, who I assumed worked for THE CITY OF PAMPA.  He told us the size of the concrete pieces that he wanted.  This affected the manner in which I used the breaking ball. The directions or instructions given to me by Mr. Colville controlled the manner in which I used the crane with the breaking ball.  Lynn Colville communicated to me orally the size into which he wanted the concrete chunks to be broken.  Mr. Colville would direct the crane operator in his operation by having you back up.  He would make you walk back up on the concrete and break it again.

In his deposition, Harvey said the City wanted the concrete broken up in two foot by two foot sizes so that it could be recycled.  He admitted that Colville did not tell him how to actually operate the crane, but was told how small he wanted the concrete.  Harvey also said he never operated the crane near the Hughes Building.  He relayed an instance in which Baker employees were proof rolling along the edge of the street and Colville told them to use a loaded tandem truck instead of a pneumatic roller.

Charles “Toby” Martin was the concrete foreman on the job and also operated the crane at times.  In his affidavit, he testified to three types of occasions in which Colville directed him.  He said Colville would look at the concrete that he was about to pour and tell him whether it was too wet or too dry.  Sometimes Colville would override Martin’s judgment and make Baker send the concrete  back to the “batch” plant to dry it up.  Colville once directed Baker to pour concrete that Martin considered too dry.  Martin complained to Richard Morris, the City’s engineer, who reviewed the pour and approved its condition.  Martin also discussed instances in which Colville would “make the breaking ball operator pull forward and break concrete into smaller portions.”  Martin said, “[h]e [Colville] controlled what the crane operator did with the breaking ball by pointing or directing what he wanted done.”  As a third example, he mentioned Colville once made Baker take up all the base from one curb to the center of the entire length of the street of the pour to test the dryness of the subgrade.

In his deposition, Martin stated that he did not believe that he ever ran the breaking ball on Kingsmill Avenue near the Hughes Building.  He understood that when Colville asked him to pull the machine forward and break the concrete again, it was for the purpose of complying with the specifications about the size of the pieces of concrete.  Martin said that at the time Colville made them take up the base from one curb to the center of the street, he was upset because once he did so, Colville only took two tests to check the dryness of the subgrade.

Sammy Vaughn was the project manager or supervisor on the job.  In his affidavit, he averred:

Lynn Colville complained to me about the compaction density on base material for one of the streets in Pampa, but I thought he was wrong, and, appealed to Richard Morris[.]  Mr. Morris determined that Mr. Colville was not correct.  From time to time, Mr. Colville told the breaking ball operators for E. D. BAKER to come back and make smaller chunks of concrete.  I saw and heard him do [that] quite a bit.

In his deposition, Vaughn testified that he had left the project by the time demolition was occurring on Kingsville Avenue south of the Hughes Building.  Vaughn testified that Colville did not participate in any way in laying down the material where the compaction density was an issue and did not have any input into the watering of the material.

As we have noted, the governmental unit’s liability is triggered by the improper operation of a vehicle or motor-driven equipment.  It is undisputed that the contract specifications required that the concrete be broken up into two feet by two feet pieces.  That was accomplished by the use of a crane and a breaking ball chosen by Baker.  The only evidence relating to any control exercised over the crane and the breaking ball was that Colville, whose job it was to inspect the work and ensure that it met the contract specifications, required Baker to break the concrete into smaller pieces when he did not believe that the pieces were the size required by the contract.  The fact that to meet this requirement may have necessitated the crane operator to manipulate the crane and breaking ball more often or move the crane over the concrete again is no evidence that the City controlled the details or manner of how the contract requirements were to be filled.  The City’s interest was in the result to be attained, 
i.e.
, the demolition of the concrete street and the size of the pieces into which the concrete was to be broken so that it might be recycled, matters over which it had the contractual right to be concerned.  Every premises owner must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability.  
Koch Refining Co. v. Chapa
, 11 S.W.3d 153, 156 (Tex. 1999). 

Moreover, even if Colville could be said to have occasionally directed the details of the performance of Baker’s work with respect to matters other than the operation of the crane and breaking ball, sporadic action directing the details of the work will not destroy the contract.  
Farrell
, 908 S.W.2d at 3.  Even assuming arguendo that Colville did control Baker’s work on the project, Colville himself was an independent contractor under the terms of his contract.  It is true that Cornell and the Baker employees by affidavit testified as to their beliefs that Colville was the City’s employee and that Richard Morris, the City’s engineer, could control Colville’s work.  However, the employees’ subjective beliefs about Colville’s relationship with the City, without specific evidence, is not sufficient to raise a fact issue about that relationship.  
See Texas Division-Tranter, Inc. v. Carrozza
, 876 S.W.2d 312, 314 (Tex. 1994); 
Rizkallah v. Connor
, 952 S.W.2d 580, 586 (Tex.App.--Houston [1
st
 Dist.] 1997, no writ).  The only specific evidence in the record is a statement that when disputes arose between Baker employees and Colville, discussions took place at City Hall in Morris’s presence and he would resolve the disputes.  However, because both Colville and Baker had contracts with the City on the same project, Morris’s attempts to merely resolve conflicts between the two independent contractors are not sufficient to raise a fact issue concerning the City’s right to exercise control over Colville in the specific manner by which he satisfied his contractual obligations.

Appellee also contends that Colville had apparent authority from the City to control Baker’s work.  However, both Colville and Morris averred by way of affidavit that the City did not direct Colville as to how he performed his contractual duties in ensuring Baker’s compliance with its contract specifications.  It is the rule that the determination whether apparent authority exists is by examination of the acts of the principal.  
Aztec Corp. v. Tubular Steel, Inc.
, 758 S.W.2d 793, 796 (Tex.App.--Houston [14
th
 Dist.] 1988, no writ).  As we have mentioned, there is no evidence of specific acts of Morris sufficient to raise a fact question whether Colville was an employee of the City.  Indeed, Morris’s mediation of disputes between the two independent contractors is consistent with Colville’s contractual status.

Because appellee failed to raise a genuine fact issue whether an employee of the City operated the equipment that damaged the Hughes Building and that the City was not entitled to sovereign immunity, we sustain the City’s first issue.  Because that action is dispositive of this appeal, it is not necessary to discuss the City’s second issue.

Our sustention of the City’s first issue mandates that we reverse the judgment of the trial court and render a take nothing judgment in favor of the City in the suit giving rise to this appeal.

John T. Boyd

 Chief Justice

Do not publish.