NO. 07-05-0234-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



SEPTEMBER 22, 2006


______________________________



REMUDA RANCH, a partnership of THOMPSON AGRIPLEX 1, a trust, 


 THOMPSON AGRIPLEX 2 , a trust, THOMPSON AGRIPLEX 3, a trust,
THOMPSON AGRIPLEX 4, a trust, and BRUCE THOMPSON, 


 Appellants


v.



ARCHER-DANIELS-MIDLAND COMPANY and ADM/FARMLAND, INC., 



 Appellees

_________________________________



FROM THE 69TH DISTRICT COURT OF HARTLEY COUNTY;



NO. 4090H; HON. RON ENNS, PRESIDING


_______________________________



Memorandum Opinion


_______________________________


Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

 Remuda Ranch, a partnership of Thompson Agriplex 1, a trust, Thompson Agriplex
2, a trust, Thompson Agriplex 3, a trust, Thompson Agriplex 4, a trust, and Bruce Thompson
(Remuda) appeal from a final summary judgment denying them recovery against Archer-Daniels-Midland Company and ADM/Farmland, Inc. (ADM). Remuda sued ADM for breach
of its purported contract to buy Remuda's 2000 and 2001 corn crop. ADM moved for
summary judgment, contending that it had no contract with Remuda and that any purported
oral agreement was unenforceable against it due to the statute of frauds. As previously
mentioned, the trial court granted the motion, which act resulted in this appeal. We reverse
and remand the cause.

 Background

 Given that the appeal is one from a final summary judgment, we construe the
evidence of record in a light most favorable to the non-movant, i.e. Remuda. Great
American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.
1965) (stating that the summary judgment evidence must be construed in a light most
favorable to the non-movant). That evidence so construed depicts the following.

 Mark Glawe of Farmland Industries (Farmland) approached Remuda about the
acquisition of Remuda's corn crop for the years 2000 and 2001. According to the record,
he was empowered to buy and sell food corn on behalf of his employer, Farmland. The two
entered into negotiations culminating in an agreement. However, Glawe told Remuda that
the sale had to be completed through AgriFarm Industries (AFI). The latter was a
cooperative owned in part by Farmland and described by another Farmland employee "as
an agent of Farmland." Apparently, AFI was used as a conduit through which Farmland
bought corn from local growers. Once employees of Farmland (such as Glawe) negotiated
the terms of the purchase, AFI would simultaneously execute corresponding contracts with
the grower and Farmland. That is, through one contract it would buy the corn from the
grower. Through the other, it would sell the corn to Farmland, in exchange for a commission
of 2%. But, it had no authority to negotiate the terms because they were dictated to AFI by
Farmland. And, this was the very procedure used to acquire the Remuda crop. 

 After AFI was told by Glawe that "'we have a deal with [Remuda]," an employee of
AFI drafted and signed the requisite contracts. Those sent to Farmland were executed by
that entity. Those sent to Remuda were not because they contained errors regarding "carry"
and "storage." Effort was made to correct them, which efforts went for naught. Instead,
according to the AFI employee, Remuda and Glawe "got tired of my incompetence . . . [and]
bypassed me." At that point, Glawe told him '"not to worry about it,'" "'this is my project, and
I'll take it from here.'" 

 In time, Farmland began receiving shipments of Remuda's corn. This continued until
ADM acquired the assets of Farmland. After that acquisition, ADM received and paid for
various shipments of the corn delivered by Remuda. However, it approached the grower
in attempt to relieve itself from the contractual agreement. When that effort failed, it then
opted not to complete further purchases. The decision resulted in Remuda suing ADM for
breach of contract. ADM moved for summary judgment contending that it had no written
contract with Remuda to buy the corn and that any oral contract was rendered
unenforceable by the statute of frauds. The trial court granted ADM's motion.

 No Contract

 We address the initial contention that there existed no contract between Remuda and
ADM to buy corn. The contention is founded upon the propositions that 1) Remuda did not
contract directly with Farmland, and 2) if it did so contract, the contract was not one of the
written agreements assumed in the ADM acquisition of Farmland's assets. According to
Remuda, material questions of fact existed regarding both contentions, which questions
precluded summary judgment. We agree.

 The summary judgment motion propounded by ADM was traditional in nature. Thus,
the burden lay with it to prove its entitlement to summary judgment as a matter of law. 
Kimber v. Sideris, 8 S.W.3d 672, 674-75 (Tex. App.-Amarillo 1999, no pet.). This is a
weighty burden given that all reasonable inferences from the evidence must be made in
favor of the non-movant. Id. at 675. Moreover, it matters not how we may construe the
evidence if we were the factfinder; what matters is whether there exists some evidence of
record which reasonable minds could interpret in a manner leading to different results. Id.
at 676. If the latter situation exists, then so does a material issue of fact precluding
summary judgment.

 Of record, we find evidence illustrating that an employee of Farmland who was
authorized to buy and sell food corn on behalf of that entity negotiated various purchases
of corn from Remuda on behalf of Farmland. While consummation of the agreement
normally required the use of a middleman, i.e. AFI, the step was "bypassed" by Glawe, the
Farmland employee. Instead, he informed AFI that he had struck a "deal" with Remuda and
that he would "take if from here." Thus, there is some evidence suggesting that Farmland
contracted, albeit orally, with Remuda to purchase food corn. 

 Next, admittedly the evidence established ADM was not originally a party to the
purported verbal agreements between Remuda and Farmland. Nonetheless, the
agreements were open grain contracts. Moreover, in acquiring the assets of Farmland, the
acquisition included, according to the "Purchase Agreement" signed by ADM and Farmland, 
"Farmland's rights under its open grain contracts as of the Closing Date." Furthermore, and
contrary to the suggestions of ADM, nothing in that provision required the open grain
contracts to be written. And, to the extent that the grain contracts contemplated were to be
listed in "Schedule 1.03(b)" of the purchase agreement, the burden lay with ADM to prove
as a matter of law that none of the agreements itemized in that schedule encompassed the
grain contracts between Remuda and Farmland. In other words, because it contended in
its traditional motion for summary judgment that it was not bound by any contract to
purchase grain from Remuda, ADM had to disprove all potential avenues of contract. And,
we are cited to no evidence disproving, as a matter of law, that the open grain contracts
encompassed in Schedule 1.03(b) included the agreements Glawe (on behalf of Farmland)
orally struck with Remuda. (1) 

 In sum, ADM failed to carry its burden of proof. The evidence of record fell short of
establishing, as a matter of law, that no contract bound the corporation to purchase corn
from Remuda. 

 Statute of Frauds

 Next, Remuda contends that ADM also failed to prove each element underlying its
affirmative defense based upon the statute of frauds. We again agree.

 A contract for the sale of goods equal to or exceeding $500 is unenforceable "unless
there is some writing sufficient to indicate that a contract for sale has been made between
the parties and signed by the party against whom enforcement is sought or by his
authorized agent or broker." Tex. Bus. & Com. Code Ann. §2.201(a) (Vernon 1994). That
the writing "omits or incorrectly states a term agreed upon" is of no consequence. Id. 

 Appearing of record is 1) some evidence of oral agreements being struck by Remuda
and Grawe/Farmland and which we previously discussed, 2) evidence of the various
written contracts drafted and signed by AFI purportedly incorporating the terms of the oral
agreements, and 3) evidence of AFI's status as Farmland's agent. These circumstances
liken to those in Tryad Serv. Corp. v. Machine Tool Center, Inc.. 512 S.W.2d 785 (Tex. Civ.
App.-Houston [14th Dist.] 1974, writ ref'd n.r.e.). 

 In Tryad, Tryad negotiated the purchase of a thread mill from Reed Tool. However,
Reed designated Machine Tool as the middleman through which the sale was to be
consummated. That is, Machine was to buy the mill from Reed and then sell it to Tryad for
the price agreed upon by Tryad and Reed. Machine and Tryad then executed a written
memorandum memorializing the terms of the sale, and a representative of Machine signed
the document. Thereafter, Reed refused to sell the mill. Upon being sued by Tryad, Reed
contended that any agreement it had with Tryad was unenforceable under §2.201 of the
Business and Commerce Code. The appellate court rejected the contention, however. It
found of record evidence indicating that Reed granted Machine authority to bind it viz the
sale of the mill. Id. at 788-89. Given that evidence, the written memorandum between
Tryad and Machine was sufficient to defeat Reed's invocation of the statute of frauds,
according to the court. Id.

 Like Machine Tool, AFI acted as the broker or agent of Farmland in purchasing the
Remuda corn, or at least some evidence indicates. So, like Tryad, Remuda can use the
contract executed with the broker or agent (AFI) to satisfy the statute of frauds, assuming
of course, the factfinder ultimately determines that AFI was the agent or broker of Farmland. 
And, that the AFI contracts may contain inaccurate information about some of the terms of
the sale, such as those relating to carriage and storage, is of no consequence given the
directive of §2.201(a); again, the statute dictates that "a writing is not insufficient because
it omits or incorrectly states a term agreed upon . . . ." Tex. Bus. & Com. Code Ann.
§2.201(a) (Vernon 1994). So, having agreed to acquire Farmland's open grain contracts
and unless it is proven that the Remuda/Glawe/Farmland agreements were not part of
Schedule 1.03(b) of the Farmland/ADM Purchase Agreement, we cannot say that ADM was
entitled to judgment, as a matter of law, on its claim of statute of frauds. 

 Having determined that ADM fell short of carrying its burden regarding both of its
grounds for summary judgment, we hold that the trial court erred in executing the decree. 
Accordingly, the summary judgment is reversed, and the cause is remanded to the trial
court.


 Brian Quinn 

 Chief Justice 
1. Nor are we cited to any evidence establishing that the "contract numbers" mentioned in the schedule
referred only to written agreements or that oral contracts could not have been or were not assigned a number
for inclusion in the list. The testimony of Tim Daugherty, Mark Beemer, and Glen Hofbauer (to which ADM
alluded) did not so establish; indeed, the comments to which we were cited do not pertain to the contents or
scope of Schedule 1.03(b). And, while it may be sensible to assume that only written contracts were included,
business practices do not necessarily comport with common sense. For this reason, ADM had the burden
to prove that the Remuda/Glawe/Farmland agreements were not included.