**Inez SILVAS, Individually and as Executor of the Estate of Denis Silvas, and Luisa Silvas, Appellants,**

**v.**

**Abraham GHIATAS, M.D., Appellee.**

**No. 04–96–00695–CV.**

Court of Appeals of Texas, San Antonio.

June 18, 1997.

Rehearing Overruled Aug. 28, 1997.

Christina Lewis, Karl Bayer, Law Offices of Karl Bayer, Austin, Thomas C. Hall, Law Office of Tom Hall, P.C., San Antonio, for Appellants.

Laura Cavaretta, Paul M. Green, Lang, Ladon, Green, Coghlan & Fisher, P.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

This is a medical-malpractice case. Inez Silvas, individually and as executor of his son Denis's estate, brought suit along with his wife, Luisa Silvas. Mr. and Mrs. Silvas sued six health care providers, claiming that the providers were negligent in providing medical care to Denis Silvas. Abraham Ghiatas, M.D., one of the six defendants, moved for summary judgment on the negligenceclaim. The trial court granted summary judgment and Mr. and Mrs. Silvas perfected this appeal. We reverse.

### FACTS

In February 1992, Denis Silvas saw a physician and complained of pain in his right knee. After two more visits to this physician, the physician ordered an X-ray of Denis's right leg. Dr. Ghiatas reviewed the X-ray and prepared a report indicating that there was a very serious problem. Dr. Ghiatas recommended a clinical evaluation and bone scan. Denis saw his treating physician approximately two weeks after the X-ray was taken, and the treating physician referred him to an orthopedic specialist.

On June 11, 1992, approximately five days before Denis was to see the orthopedic specialist, his right leg broke while he was at work. When Denis went to the hospital for the break, he was told that he had bone cancer or osteosarcoma of the right leg. Denis's right leg was amputated and he was forced to undergo a great deal of medical treatment for the cancer. The cancer ultimately reached his lungs and he died on September 9, 1994 at the age of twenty-five.

### STANDARD OF REVIEW

In their sole point of error, Mr. and Mrs. Silvas claim that the trial court erred in granting summary judgment in favor of Dr. Ghiatas because genuine issues of material fact remained. To prevail on summary judgment, the movant must disprove at least one of the essential elements of each of the plaintiff's causes of action. *Lear Siegler, Inc. v.*

*Perez,* 819 S.W.2d 470, 471 (Tex.1991). This burden requires the movant to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the nonmovant is taken as true, and all reasonable inferences are indulged in favor of the nonmovant. *Id.; see also Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). Further, any doubt should be resolved in favor of the nonmovant. *Nixon,* 690 S.W.2d at 548–49; *see also Doe,* 907 S.W.2d at 477.

### DISCUSSION

In his motion for summary judgment, Dr. Ghiatas alleged that he met the applicable standard of care in reading Denis's X-rays and that no act or omission on his part proximately caused the damages claimed by Mr. and Mrs. Silvas. He attached his own affidavit as summary judgment proof. Dr. Ghiatas's affidavit set forth with particularity the standard of care for a radiologist reading X-ray films for a medical group on a part-time fee-for-service basis, and detailed the steps taken to comply with that standard of care in the reading of Denis's X-rays.

Mr. and Mrs. Silvas opposed the summary judgment motion, claiming that genuine issues of material fact remained as to their claim that Dr. Ghiatas was negligent in his care and treatment of their son. Their summary judgment proof included the affidavit of Dr. Michael McGuire, an orthopedic surgeon, deposition excerpts from the deposition of Dr. Ghiatas, deposition excerpts from the deposition of Denis Silvas, and discovery responses filed by one of the other defendants in the case. The court granted Dr. Ghiatas's motion without stating the grounds upon which it was granted.

At the hearing on his motion for summary judgment, Dr. Ghiatas claimed that the summary judgment proof offered by Mr. and Mrs. Silvas was defective. Specifically, Dr. Ghiatas asserted that the expert affidavit of Dr. McGuire was conclusory in nature and did not address the threshold issue of the proper standard of care. As such, Dr. Ghiatas claimed that the affidavit was not competent summary judgment proof and should not be considered by the trial court. In response to these arguments, Mr. and Mrs. Silvas sought leave to file an amended affidavit to correct any defects in the summary judgment proof. The trial court denied this request. Mr. and Mrs. Silvas then filed a motion to supplement their summary judgment evidence with a corrected expert affidavit. The trial court ultimately denied this motion as well.

On appeal, Mr. and Mrs. Silvas claim that the affidavit filed with their initial response was competent summary judgment proof and should have been considered by the trial court. Although the record does not reflect whether or not this affidavit was considered by the court, Mr. and Mrs. Silvas claim that "it is apparent that the court was swayed by defense counsel's arguments" regarding the affidavit. They claim that their expert affidavit, if considered by the court, was sufficient to support a jury verdict in the case. We agree.

 When a defendant health care provider moves for summary judgment in a medical-malpractice action, it must negate one or more of the following elements of the plaintiff's cause of action: (1) the duty of the physician to act according to a certain standard; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach and the injury. *See, e.g., Brown v. Bettinger,* 882 S.W.2d 953, 956 (Tex.App.—Beaumont 1994, no writ); *White v. Wah,* 789 S.W.2d 312, 315 (Tex.App.—Houston [1st Dist.] 1990, no writ). To support a summary judgment, the physician's expert testimony must identify the relevant standard of care, establish that the expert is familiar with that standard, and demonstrate that the medical care provided complied with the standard of care. *White,* 789 S.W.2d at 315–16. Dr. Ghiatas's affidavit met this standard because it explicitly identified the applicable standard of care, described in detail all services provided and the reason therefor, and stated unequivocally that the services provided complied with the standard of care used by other reasonably prudent radiolo-

gists acting under the same or similar circumstances. *See Davis v. Manning,* 847 S.W.2d 446, 449–51 (Tex.App.—Houston [14th Dist.] 1993, no writ) (finding affidavit with such detail sufficient to support summary judgment).

Once the defendant-movant has successfully negated an element of the plaintiff's cause of action, such as breach of the standard of care, the burden shifts to the plaintiff to produce competent medical testimony that raises an issue of fact with regard to negligence. *See Pinckley v. Gallegos,* 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied). To raise a fact issue sufficient to defeat summary judgment, the plaintiff's controverting expert affidavit should specifically identify the standard of care, establish the expert's familiarity with that standard, and explain why the treatment rendered by the defendant health-care provider breached the applicable standard. *See Knetsch v. Gaitonde,* 898 S.W.2d 386, 388 (Tex.App.—San Antonio 1995, no writ); *see also Connor v. Waltrip,* 791 S.W.2d 537, 541–42 (Tex.App.—Dallas 1990, no writ) (McClung, J., concurring). However, the expert's affidavit need not recite the pattern jury charge definition of negligence to be sufficient. *Knetsch,* 898 S.W.2d at 389. "In the case of an affidavit, the totality of the instrument must be examined, rather than any specific formalistic words." *Id.*

The affidavit proffered by Mr. and Mrs. Silvas in this case meets the test set out above. Dr. McGuire states in his affidavit that he is familiar with the applicable standard of care. He also states that Dr. Ghiatas was negligent because he did or failed to do "that which a physician and/or health care provider and specifically a radiologist acting in the capacity [Dr. Ghiatas] describes in his affidavit and deposition, using reasonable care and prudence would have done under the same or similar circumstances." Finally, he lists specific omissions that breached this standard of care and proximately caused the plaintiffs' damages. Specifically, he states that Dr. Ghiatas was negligent in:

1. Failing to contact and discuss the X-ray findings of Denis Silvas with a competent physician;

2. Failing to ensure that the X-ray report was reviewed by a competent physician;

3. Failing to follow-up and ensure that appropriate action had been taken in response to the X-ray and report;

4. Failing to inform plaintiff of the results of the X-ray or ensure that plaintiff had been informed of the results and implications of the X-ray and the X-ray report; and

5. Failing to inform plaintiff and/or a competent and responsible physician of the need for immediate investigation and treatment of the conditions revealed on the X-ray.

Examining the totality of this affidavit, we find that the standard of care is stated with sufficient particularity as it may be reasonably understood to require a radiologist to affirmatively do that which Dr. McGuire states that Dr. Ghiatas failed to do.

Dr. Ghiatas nevertheless argues that, notwithstanding the standard-of-care issue, Dr. McGuire's affidavit is not competent summary judgment proof because it fails to set forth facts that would be admissible in evidence and affirmatively show that Dr. McGuire was competent to testify to the matters stated therein. Essentially, Dr. Ghiatas claims that Dr. McGuire was not qualified as an expert in radiology. Mr. and Mrs. Silvas respond that Dr. Ghiatas failed to challenge their witness's qualifications in the trial court, and should not be allowed to complain of this issue for the first time on appeal. We do not reach the issue of whether Dr. Ghiatas may properly challenge Dr. McGuire's qualifications on appeal because even if Dr. Ghiatas had objected at the trial court level, it is clear from McGuire's affidavit that he was qualified to testify. As our Texas Supreme Court recently held, the plaintiff's controverting expert need not be a specialist in the particular area in which the defendant-physician practices so long as his affidavit demonstrates that by virtue of his knowledge, skill, experience, training, or education regarding the specific issue before the court, his testimony would assist the jury in determining the fact issues of negli-

gence and/or causation. *See Broders v. Heise*, 924 S.W.2d 148, 153 (Tex.1996). Although Dr. McGuire was not a radiologist, it is common knowledge that orthopedic surgeons and radiologists work closely together. Their professions are interrelated and their specialties intertwined. Indeed, it would be a rare orthopedic injury in which an X-ray and radiology report were not involved prior to surgery. Dr. McGuire, as an orthopedic surgeon, was sufficiently familiar with the practice of radiology to qualify him as an expert witness. This conclusion is further supported by the curriculum vitae attached as an exhibit to Dr. McGuire's affidavit. This exhibit reveals that a large percentage of the articles and abstracts written by Dr. McGuire have appeared in publications such as *Radiology, Skeletal Radiology, American Journal of Radiology,* and *Proceedings of the Scientific Assembly of the Radiological Society of North America.* We conclude that Dr. McGuire was competent to testify regarding the matters set forth in his affidavit.

◼ Dr. Ghiatas further argues that Dr. McGuire's affidavit was not competent summary judgment evidence because it was not readily controvertible. Dr. Ghiatas claims that Dr. McGuire failed to set out the facts upon which his opinion was based. We disagree. The affidavit of Dr. McGuire clearly sets forth five specific omissions claimed to constitute medical negligence. The alleged omissions are objective facts that are readily controvertible. As such, Dr. McGuire's affidavit does not fail as merely conclusory.

◼ In his final challenge to the controverting affidavit offered by Mr. and Mrs. Silvas, Dr. Ghiatas asserts that the affidavit fails to address all of the allegations made by Mr. and Mrs. Silvas and negated by Dr. Ghiatas. Specifically, Dr. Ghiatas contends that Dr. McGuire failed to controvert Dr. Ghiatas's denial that he had a duty to (1) directly contact patients or their families to discuss his interpretation of their radiological studies; (2) suggest, recommend, or otherwise set up orthopedic consultations; (3) advise the patient not to work or to bear weight on the affected limb; (4) suggest that the patient seek health care elsewhere; (5) admit

the patient to a hospital for treatment; (6) judge the competency of the treating physician; (7) consult with a specialist on the patient's behalf; and (8) arrange for a transfer of the patient to another facility. Accordingly, Dr. Ghiatas asks this court to affirm the summary judgment in part as to these allegations if a decision is made to reverse and remand as to the others. What Dr. Ghiatas fails to recognize, however, is that all of the allegations contained in Plaintiff's Fourth Amended Original Petition, the live pleading at the time the motion for summary judgment was filed, comprise one cause of action—medical negligence. Dr. Ghiatas cites *Johnston v. Vilardi,* 817 S.W.2d 794 (Tex.App.—Houston [1st Dist.] 1991, writ denied), in support of his contention that summary judgment should be affirmed on part of Mr. and Mrs. Silvas's claim. The *Johnston* case is distinguishable from the case at bar, though, because the *Johnston* court affirmed in part and reversed and remanded in part a summary judgment as it pertained to two distinct *causes of action,* not multiple allegations within a single cause of action. *See Johnston,* 817 S.W.2d at 797. We are aware of no law, and none has been cited by Ghiatas, requiring us to effectively split the plaintiffs' cause of action by affirming summary judgment in part and reversing and remanding in part. The plaintiffs' medical negligence cause of action must stand or fall as a unit when challenged via a motion for summary judgment. A fact issue as to even one of the plaintiffs' allegations of negligence in this case is sufficient to defeat summary judgment on the medical negligence claim.

Having found that Dr. McGuire's affidavit adequately stated the standard of care and established Dr. McGuire's qualifications as an expert, it is apparent that Dr. McGuire's affidavit was properly before the trial court. Because this affidavit raises material issues of fact, summary judgment was not proper. In reaching this conclusion, we express no opinion on the merits of the plaintiffs' claim. Our only task is to decide if a fact issue has been raised sufficient to entitle Mr. and Mrs. Silvas to a trial on the merits. Because we conclude that material issues of fact were raised, we reverse the summary judgment in

favor of Dr. Ghiatas and remand this case for further proceedings.

ANGELINI, J., dissents.

ANGELINI, Justice, dissenting.

Because the trial court correctly granted Dr. Ghiatas's Motion for Summary Judgment and Severance, I respectfully dissent.

The issue in this case is whether the Silvases presented competent expert testimony sufficient to controvert Dr. Ghiatas's summary judgment proof. Dr. Ghiatas's summary judgment proof, consisting of Dr. Ghiatas's affidavit, was indisputably sufficient to meet the standard required for granting summary judgment. The burden, therefore, shifted to the Silvases to produce competent medical evidence to raise a fact issue. This the Silvases failed to do.

## FACTUAL AND PROCEDURAL BACKGROUND

The Silvases are the parents of Denis Silvas, who died from cancer on September 9, 1994, at the age of 25. Denis went to the Gonzaba Medical Group Clinic on February 29, March 31, and May 15, 1992, complaining of pain in his right leg. An X-ray of Denis's right leg was ordered and taken on May 15, 1992. Dr. Ghiatas, a radiologist who worked for the Gonzaba Medical Group Clinic on a part-time fee-for-service basis, reviewed the X-ray. Dr. Ghiatas dictated a report and contacted the treating physician and/or his team and notified them that the X-ray revealed an abnormal finding. He marked the abnormal finding on the X-ray films and further communicated his finding to the treating physician through his dictated radiology report.

Denis returned to the Gonzaba Medical Group Clinic on May 29, 1992, but, after waiting several hours, left to attend classes. Denis again returned to the clinic on June 1, 1992, at which time he was referred for an orthopedic consultation. Denis's right leg broke, however, on June 11, 1992, before he was able to see an orthopedist. Denis was eventually diagnosed with cancer in his right leg which spread to his lungs and caused his death.

The Silvases brought medical malpractice actions against the health care providers involved, including Dr. Ghiatas. The Silvases specific allegations against Dr. Ghiatas were that: (1) he failed to contact and discuss the X-ray findings with a competent physician; (2) he failed to follow up with Denis in order to ensure appropriate action was taken in response to the X-ray report; (3) he failed to inform Denis of the X-ray results; (4) he failed to order further testing or consultation with a specialist; (5) he failed to admit Denis to the hospital or an appropriate facility; (6) he failed to ensure immediate investigation and treatment of Denis's condition; (7) he failed to warn Denis not to work or bear weight on his leg or that the condition was serious and needed immediate action; and (8) he failed to inform Denis that he would not receive timely and appropriate treatment at the Gonzaba Medical Group Clinic and that he should seek medical care elsewhere.

Dr. Ghiatas filed a Motion for Summary Judgment and Severance. His supporting proof consisted of his affidavit in which he set forth his qualifications as a board-certified radiologist and stated that, based upon his years of training and experience, he was familiar with the standard of care and treatment for a radiologist reading X-ray films for a medical group on a part-time fee-for-service basis. Dr. Ghiatas then described the standard of care, stating specifically what actions a radiologist should take when reviewing films under these circumstances. Dr. Ghiatas further described the radiologist's relationship to the patient which is ordinarily through the treating physician. This relationship, according to Dr. Ghiatas, is such that it would be improper for the radiologist to contact the patient, to follow-up with further testing and treatment, to consult with specialists, or admit the patient to a hospital. Dr. Ghiatas then indicated that his actions with reference to Denis were in accordance with the described standard of care.

The Silvases responded to Dr. Ghiatas's Motion for Summary Judgment by contending there are material fact issues which prevent summary judgment in favor of Dr. Ghiatas. To controvert Dr. Ghiatas's summary judgment proof, the Silvases relied, primari-

ly, on the affidavit of Dr. Michael McGuire, an orthopedic surgeon. In his affidavit, Dr. McGuire stated his qualifications by attaching his curriculum vitae and by stating he was familiar with the standard of care for radiologists such as Dr. Ghiatas. Dr. McGuire then gave his opinion that Dr. Ghiatas was negligent and failed to act as a radiologist using reasonable care and prudence would have under the same or similar circumstances, proximately causing Denis's injuries and death. Dr. McGuire also listed five specific acts and/or omissions which he believed constituted negligence on the part of Dr. Ghiatas: (1) failing to contact and discuss the X-ray findings with a competent physician; (2) failing to ensure the X-ray report was reviewed by a competent physician; (3) failing to follow up and ensure appropriate action was taken in response to the X-ray and report; (4) failing to inform Denis of the X-ray results; and (5) failing to inform Denis and/or a competent physician of the need for immediate treatment.

A hearing was held on the summary judgment motion on January 30, 1996. Before the court ruled, however, the Silvases filed their Motion to Supplement Summary Judgment Evidence. They requested leave to file Dr. McGuire's Supplemental Affidavit in response to Dr. Ghiatas's objections to Dr. McGuire's original affidavit. The trial court overruled the Motion to Supplement and granted Dr. Ghiatas's Motion for Summary Judgment and Severance. The Silvases appealed, contending that, in spite of their unsuccessful attempt to supplement the record with another affidavit from Dr. McGuire, Dr. McGuire's original affidavit was sufficient to raise a fact issue. Thus, they argue that the trial court erroneously granted summary judgment in Dr. Ghiatas's favor.

## DISCUSSION

### A. Applicability of Rule 166a(c) to Non–Movant Affidavits

Rule 166a(c) of the Texas Rules of Civil Procedure sets forth the following with regard to the testimony of an interested or expert witness in a summary judgment proceeding:

A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

Tex.R. Civ. P. 166a(c).

Dr. Ghiatas's affidavit clearly met the requirements of Rule 166a(c). As such, Dr. Ghiatas met his burden of showing he was entitled to judgment as a matter of law. Once Dr. Ghiatas satisfied the summary judgment requirements, the burden then shifted to the Silvases to raise a fact issue. Because this is a medical malpractice case, the Silvases were required to negate Dr. Ghiatas's right to summary judgment by presenting expert medical testimony. *See Chopra v. Hawryluk*, 892 S.W.2d 229, 231 (Tex. App.—El Paso 1995, writ denied). Their expert was required to specifically identify the applicable standard of care, show that he is familiar with the standard and testify as to why the treatment at issue fell below the standard. *See Knetsch v. Gaitonde*, 898 S.W.2d 386, 388 (Tex.App.—San Antonio 1995, no writ).

The Silvases do not contend that the burden of raising a fact issue did not shift to them, but rather that, as non-movants, their expert testimony is not subject to the stringent evidentiary standards set forth in Rule 166a(c). I disagree. First, the Silvases offer no authority in support of their position. In fact, they admit that this court in *Knetsch* recognized, at least in dicta, that non-movants are held to the same stringent standards in presenting expert testimony in opposition to summary judgment motions in medical malpractice cases as are movants. Secondly, the Texas Supreme Court has recently noted the applicability of Rule 166a(c) to a non-movant's expert affidavit. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex.1996). In *Ryland*, the supreme court, referring to the non-movant's affidavit, stated that conclusory affidavits are not enough to raise fact issues and that "[t]hey are not

credible, nor susceptible to being readily controverted." *Id.* (citing Rule 166a(c)). Thus, in order to raise a fact issue, Dr. McGuire's affidavit was required to be "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies," and it must have been capable of being "readily controverted." TEX.R. CIV. P. 166a(c). Dr. McGuire's affidavit does not satisfy this standard.[1]

The Silvases argue that, even if they were required to meet the Rule 166a(c) burden, their summary judgment evidence was sufficient. Again, I disagree. Dr. McGuire failed to state the facts upon which his opinion was based. Therefore, his testimony was conclusory and not readily controvertible. Further, as stated above, this court has held that in order to raise a fact issue, the plaintiff's expert must specifically identify the standard of care applicable, demonstrate familiarity with that standard and show why the defendant's treatment fell below the standard. *See Knetsch,* 898 S.W.2d at 388. Although the majority concludes that Dr. McGuire's affidavit, considered in its entirety, is sufficient to satisfy this test, I believe Dr. McGuire's testimony falls short.

Essentially, Dr. McGuire states in his affidavit that he is competent and qualified to testify, that he reviewed certain information in connection with the case, that he is familiar with the standard of care in this situation, that Dr. Ghiatas was negligent in failing to do five items relating to Denis's X-ray, and that Dr. Ghiatas's negligence caused the damage. However, Dr. McGuire fails to specifically identify the applicable standard of care, fails to demonstrate his familiarity with the standard of care or to show how he is familiar with the standard of care, and fails to show why Dr. Ghiatas's treatment fell below that standard. Merely stating that he is familiar with the standard of care and testifying with regard to whether the standard was met is not sufficient to satisfy Rule 166a(c). *See Evans v. Conlee,* 787 S.W.2d

570, 572 (Tex.App.—Corpus Christi 1990, writ denied). Yet, that is essentially what Dr. McGuire did in this case.

### B. Competency of Non–Movant's Affidavit Under Rule 166a(f)

The Silvases chose to offer the expert testimony of Dr. McGuire, an orthopedic surgeon, in an attempt to controvert Dr. Ghiatas's summary judgment proof. Rule 166a(f) addresses the competency of summary judgment affidavits as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

TEX.R. CIV. P. 166a(f).

Dr. Ghiatas challenges the competency of Dr. McGuire to testify regarding the standard of care applicable to a radiologist. According to Dr. Ghiatas, Dr. McGuire's testimony is insufficient because he has never practiced radiology, he has no radiology training and experience, and he fails to demonstrate how he is familiar with the standard of care applicable to radiologists. The Silvases argue that since Dr. Ghiatas did not raise this issue in the trial court, he may not raise it on appeal. Rule 166a(f) points out that defects in the form of affidavits or attachments are not grounds for reversal unless objected to in order to give the opposing party an opportunity to amend. The qualification of an expert to testify in a particular discipline is not a defect in the form of the affidavit, but rather is a substantive defect. Therefore, Dr. Ghiatas is not precluded from raising the competency issue on appeal. *See Feldman v. Manufacturers Hanover Mortgage Corp.,* 704 S.W.2d 422, 425 (Tex.App.— Houston [14th Dist.] 1986, writ ref'd n.r.e.).

In order to testify as an expert, a witness must be qualified "by knowledge, skill, experience, training, or education." TEX.R. CIV. EVID. 702; *Broders v. Heise,* 924 S.W.2d 148,

---

1. I note that the majority does not specifically discuss the issue of whether the non-movant is held to the Rule 166a(c) standard. The majority implicitly finds that Rule 166a(c) does apply to the non-movant because the majority opinion contains a discussion regarding whether Dr. McGuire's affidavit was readily controvertible. Therefore, while I agree with the majority's apparent opinion that the non-movant is held to the Rule 166a(c) standard, I disagree as to whether the non-movant has met its burden.

152 (Tex.1996). The Silvases argue, and the majority agrees, that Dr. McGuire was competent to testify regarding the standard of care applicable to radiologists. The majority relies on "common knowledge that orthopedic surgeons and radiologists work closely together." The majority further relies on Dr. McGuire's curriculum vitae which "reveals that a large percentage of the articles and abstracts written by Dr. McGuire have appeared in" radiology publications. I do not agree that Dr. McGuire's competency may be established by common knowledge. Further, Dr. McGuire's curriculum vitae does not indicate a large percentage of radiology-related publications, and certainly not to such an extent to show he is qualified to testify to the standard of care for radiologists.

Although the supreme court has recognized that there are circumstances where a member of one medical speciality may testify with regard to another speciality, the offering party is not relieved of the requirement to establish that the expert has "knowledge, skill, experience, training, or education" regarding the issue before the court which qualifies the expert to give an opinion on that subject. *See Broders,* 924 S.W.2d at 153. The Silvases have failed to meet this requirement. There are many types of health care practitioners, several of whom work closely together in rendering patient care. To recognize that one health care discipline is interrelated and intertwined with another is not, in my opinion, sufficient justification to allow an expert witness to testify regarding the standard of care in a related discipline. The Silvases cite the case of *Hersh v. Hendley,* 626 S.W.2d 151 (Tex.App.—Fort Worth 1981, no writ) in support of their argument that a medical professional in one speciality can testify in a suit against a medical professional in a related speciality. In that case, which involved the alleged malpractice of a podiatrist, the plaintiff offered expert medical testimony regarding the standard of care from an internist and an orthopédic surgeon. This expert testimony was considered competent because the acts of negligence at issue related to practices commonly and equally recognized and developed in all fields of practice, such as taking a medical history. *Id.* at 154–55.

The standard of care required of a radiologist in reviewing X-rays and reporting the results is by no means commonly and equally recognized and developed in all fields of practice. Radiology is a distinct medical specialty. Although there may be certain standards of patient care for radiologists which are commonly and equally recognized and developed in all fields of practice, it simply cannot be said that those items Dr. McGuire has identified as negligent acts fall into this category. The negligent acts identified relate very specifically to what a radiologist, in Dr. McGuire's opinion, should do concerning the reporting, follow up, and review of X-ray findings.

Furthermore, both the Silvases and the majority have somewhat overstated Dr. McGuire's qualifications to testify regarding the standard of care of radiologists as evidenced by his curriculum vitae. Dr. McGuire's curriculum vitae, while quite impressive with regard to his qualifications as an orthopedic surgeon, indicates nothing in the way of radiological experience. There is absolutely nothing in the curriculum vitae from which it can be implied that Dr. McGuire is familiar with the standard of care for radiologists such as Dr. Ghiatas. The only reference to radiology is the fact that Dr. McGuire has been published in some radiology-related publications. Dr. McGuire's curriculum vitae, consisting of 24 pages, shows he is a board certified orthopedic surgeon. His education, academic positions, hospital appointments, medical society memberships, medical society committees, university teaching positions, honors and awards, professional activities, and visiting professorships all relate primarily to orthopedic surgery.

Dr. McGuire lists a total of 38 published articles, 5 published book chapters, 57 published abstracts, 7 articles submitted for publication, 2 video tapes, 17 research activities, and 41 presentations. A review of these items reveals 11 published articles in radiology-related publications and 2 published abstracts in radiology-related publications. The remainder of Dr. McGuire's activities relate to orthopedic surgery and other areas

of medical disciplines, but not specifically to radiology. Thus, only a small percentage of Dr. McGuire's articles and abstracts have appeared in radiology-related publications. Moreover, there is no indication of whether these articles and abstracts address the substantive practice of radiology or whether they simply discuss a specific topic of orthopedic surgery that might be of interest to a radiologist.

Dr. McGuire's affidavit contains no statement pertaining to his qualifications to testify in the field of radiology. In fact, his affidavit contains no statement pertaining to his qualifications to testify other than to refer to his curriculum vitae and to state that his opinions are based on his "education, training and experience." I cannot, therefore, agree that Dr. McGuire is sufficiently qualified, by virtue of his knowledge, skill, experience, training, or education regarding the specific issue before the court, to assist the fact finder in determining the ultimate issues of negligence and/or causation. *See Broders,* 924 S.W.2d at 153. Thus, the Silvases have failed to prove Dr. McGuire is qualified to testify to the standard of care of a radiologist such as Dr. Ghiatas.

Because the Silvases failed to present competent summary judgment proof to controvert Dr. Ghiatas' affidavit, I would affirm the trial court's judgment.