NUMBER 13-00-280-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


PAULA CARRILLO, AS REPRESENTATIVE OF THE ESTATE OF MARGARITA COLUNGA , Appellant,


v.



ERIC HIRSCH, M.D. Appellee.

___________________________________________________________________


On appeal from the 28th District Court

of Nueces County, Texas.

____________________________________________________________________


O P I N I O N

Before Justices Hinojosa, Yañez, and Castillo

Opinion by Justice Castillo


This is an appeal from a summary judgment granted in a medical malpractice suit. We reverse and remand to the trial court
for a trial on the merits.

Factual Summary

On February 29, 1996, Dr. Eric Hirsch, an orthopedic surgeon, performed knee replacement surgery on Margarita Colunga,
a seventy-one year-old woman. Following the surgery, Ms. Colunga developed postoperative respiratory distress. She was
placed on a ventilator, and died a week later on March 7, 1996. 

Paula Carrillo, as representative of Ms. Colunga's estate, brought suit against Dr. Hirsch, the hospital, and the
anesthesiologist under the Medical Liability and Insurance Act of Texas. Tex. Rev. Civ. Stat. Ann. art. 4590i (Vernon
Supp. 2001). She alleged that Dr. Hirsch violated his standard of care in deciding to proceed with surgery on Ms. Colunga,
an elderly woman with an enlarged heart and a history of lung disease. She further alleged that this decision to proceed to
surgery was the cause of Ms. Colunga's postoperative medical condition and subsequent death. 

Dr. Hirsch moved for summary judgment with respect to his liability only (1) on the basis that Carrillo's sole expert witness,
an anesthesiologist named Dr. Laurence Rosen, was not qualified to testify as to the standard of care for Dr. Hirsch. A
hearing on that summary judgment motion was held, and the trial judge struck the expert witness and granted the summary
judgment that same day. Appellant's motion for new trial was timely filed, and denied. This appeal was properly perfected,
and plaintiff asks that we reinstate the expert witness and reverse the summary judgment.

The Motion to Strike 

In appellant's first point of error, she argues that the trial court improperly granted the motion to strike her expert witness,
based on the deadline for objecting to an expert under article 4590i, §14.01(e). We deny this point of error. Under that
article, the rule is that "[a] pretrial objection to the qualifications of a witness under this section must be made not later than
the later of the 21st day after the date the objecting party receives a copy of the witness's curriculum vitae or the date of the
witness's deposition." Tex. Rev. Civ. Stat. Ann. art. 4590i, §14.01(e) (Vernon Supp. 2001) (emphasis added). 

In this case, the deposition of Dr. Rosen was taken on July 30, 1999. It is undisputed that the witness's curriculum vitae
was not received by the defendant until December 3, 1999. The motion to strike the witness was made on December 14,
1999. The motion to strike was made within twenty-one days of receiving the curriculum vitae, and thus was properly
heard. (2) 

In her second point of error, appellant argues that the trial court erred in granting the motion to strike based on Dr. Rosen's
lack of qualifications as an expert. We grant this point of error. 

We review the trial court's decision to strike an expert's testimony for abuse of discretion. Gammill v. Jack Williams
Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998). An abuse of discretion exists only where the trial court has acted
without reference to guiding rules and principles. Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997).

Appellee's motion to strike Dr. Rosen as an expert was based on the sole argument that Dr. Rosen as an anesthesiologist
was unqualified to testify as to the standard of care applicable to an orthopedic surgeon. As evidence in support of this
motion, appellee pointed to Dr. Rosen's own affidavit and deposition, where Dr. Rosen stated that he was not an orthopedic
surgeon and had no training in the field of orthopedic surgery. 

Under the Medical Liability and Insurance Act statute, a physician testifying in a medical malpractice case against another
physician may qualify as an expert on the issue of standard of care if the testifying physician: 

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or
condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of
medical care.



Tex. Rev. Civ. Stat. Ann. art. 4590i §14.01(a) (Vernon Supp. 2001). 

This Court in evaluating whether the witness is qualified on the basis of training or experience must look to whether the
witness "is board certified or has other substantial training or experience in an area of medical practice relevant to the
claim." Tex. Rev. Civ. Stat. Ann. art. 4590i §14.01(c) (Vernon Supp. 2001).

It is a well-established rule that a medical expert witness does not need to practice the same specialty as the doctor against
whom he is testifying in order to be qualified to testify. Broders v. Heise, 924 S.W.2d 148, 152-53 (Tex. 1995); Hart v.
Van Zandt, 399 S.W.2d 791, 798 (Tex. 1965). Instead, regardless of the specialty of the testifying expert, "[w]hat is
required is that the offering party establish that the expert has knowledge, skill, experience, training, or education regarding
the specific issue before the court which would qualify the expert on that particular subject." Broders, 924 S.W.2d at 153.
Further, where "a party can show that a subject is substantially developed in more than one field, testimony can come from
a qualified expert in any of those fields." Id. at 154. 

There have been several cases in which a subject was held to be equally developed in more than one field such that an
expert from one field was qualified to testify against a doctor in another on issues such as causation and standard of care.
For example, in Blan v. Ali, the Fourteenth Court of Appeals held that a neurologist was qualified to testify as an expert
under article 4590i against a cardiologist and an emergency room physician regarding the standard of care in treating a
stroke victim, where the neurologist stated in his affidavit that the standard of care applied to any physician treating a
patient suffering from those symptoms. Blan v. Ali, 7 S.W.3d 741, 746-47 (Tex. App.-Houston [14th Dist.] 1999, no pet.).
That court held that "[t]o categorically disqualify a physician from testifying as to the standard of care solely because he is
from a different school of practice than the doctors charged with malpractice ignores the criteria set out in section 14.01(a)
of the Medical Liability Act and Rule 702." Id.at 746. Other courts of appeals have held similarly. See, e.g., McIntyre v.
Smith, 24 S.W.3d 911, 915 (Tex. App.-Texarkana 2000, pet. denied) (physicians in several different fields all qualified to
testify against nephrologist regarding standard of care for insertion of catheter and analysis of x-ray); Hernandez v.
Altenberg, 904 S.W.2d 734, 738 (Tex. App.-San Antonio 1995, writ denied) (anesthesiologist qualified to testify against
hematologist regarding the standard of care for the insertion of catheters); Hersh v. Hendley, 626 S.W.2d 151, 154-55 (Tex.
App.-Fort Worth 1981, no writ) (orthopedic surgeon could testify against podiatrist on standard of care for podiatric
surgery); Simpson v. Glenn, 537 S.W.2d 114 (Tex. Civ. App.-Amarillo 1976, writ ref'd n.r.e.) (general surgeon qualified to
testify against ob/gyn regarding standard of care for post-surgical treatment following hysterectomy). In some instances,
medical specialties are interrelated in the treatment of a specific injury or illness. For instance, orthopedic surgeons and
radiologists work together to evaluate the results of an x-ray, and in such instances a specialist in either field may be
qualified to testify as to the standard of care. Silvas v. Ghiatas, 954 S.W.2d 50, 53-54 (Tex. App.-San Antonio 1997, writ
denied) (orthopedic surgeon qualified to testify against radiologist). 

Nor is the outcome here dictated by our prior decision in Boren v. Bullen, a medical malpractice suit brought against an
infectious disease specialist. Boren v. Bullen, 972 S.W.2d 863 (Tex. App.-Corpus Christi 1998, no pet.). In that case, the
plaintiff offered the testimony of an orthopedic surgeon, Dr. Robert Killian, in an attempt to rebut the defendant's summary
judgment evidence on the subject of standard of care. Id. at 864. We held that the trial court properly struck Dr. Killian's
testimony because there was no showing made that the proffered expert had any knowledge, experience, or training in the
field of infectious diseases. Id. at 865-66. We expressly acknowledged, however, that the expert need not "possess
identical certifications and qualifications to those defendant physicians about whom they offer testimony." Id. at 865.

In contrast, in the instant case the appellant alleges a failure on the part of the orthopedic surgeon in evaluating a patient as
a candidate for surgery. In his affidavit, Dr. Rosen states that he has had education and experience in evaluating patients as
surgical candidates. Further, the appellee himself stated in his affidavit that the accepted standard of care for an orthopedic
surgeon includes consulting with an anesthesiologist prior to making the decision to proceed to surgery, and that in this
case he did consult with an anesthesiologist, Dr. McCutchon, in making the decision to proceed. Appellee's expert witness,
Dr. Lorence Trick, an orthopedic surgeon, likewise states that the standard of care for an orthopedic surgeon includes
undertaking a pre-operative consultation with an anesthesiologist regarding the safety of proceeding to surgery. 

It is true that a medical expert must demonstrate "something beyond mere possession of a medical doctorate" in order to be
qualified to testify. Id. at 865. He must demonstrate "knowledge, skill, experience, training, or education" regarding the
specific issue before the court. Broders, 924 S.W.2d at 152. The two issues in this case are whether Dr. Hirsch breached
the standard of care owed to Ms. Colunga by failing to properly analyze her risk factors prior to surgery, and whether said
failure was the proximate cause of her subsequent death. Dr. Rosen's affidavit and curriculum vitae demonstrate his
particular knowledge and experience regarding both the standard of care and the causation elements of this claim, beyond
his possession of a medical degree. (3) The affidavits of appellee, Dr. Rosen, and Dr. Trick also demonstrate that the roles
of the orthopedic surgeon and the anesthesiologist are interrelated in the context of evaluating a patient's risk factors prior
to making the decision to proceed with surgery. See Silvas, 954 S.W.2d at 53-54. Therefore, Dr. Rosen met the
requirements for an expert witness under article 4590i and the relevant case law, and the decision to strike his testimony
was an improper abuse of discretion. 

The Motion for Summary Judgment

In points of error four and five, appellant argues that the trial court erred in granting summary judgment based on evidence
presented on the issues of standard of care and proximate cause. Hirsch moved for summary judgment under both Texas
Rule of Civil Procedure 166a(c) (traditional summary judgment) and Texas Rule of Civil Procedure 166a(i) (no-evidence
summary judgment), and the trial court did not specify on which grounds the summary judgment was granted. If a
summary judgment order issued by the trial court does not specify the ground or grounds relied upon for that ruling, it will
be upheld if any of the grounds in the summary judgment motion can be sustained. Bradley v. State ex rel. White, 990
S.W.2d 245, 247 (Tex. 1999); Weakly v. East, 900 S.W.2d 755, 758 (Tex. App.-Corpus Christi 1995, writ denied).

In a traditional summary judgment under Texas Rule of Civil Procedure 166a(c), the movant has the burden of showing
that there is no genuine issue of material fact and is entitled to judgment as a matter of law. American Tobacco Co. v.
Grinnell, 951 S.W.2d 420, 425 (Tex. 1985). In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the nonmovant will be taken as true. Id. Every reasonable inference must be
indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant. Id. Evidence favoring the
movant's position will not be considered unless it is uncontradicted. Great American Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1972). A defendant's motion for summary judgment must disprove at least
one essential element of each of the plaintiff's causes of action, or establish all the elements of an affirmative defense as a
matter of law. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). 

In considering this summary judgment on the issues of proximate cause and standard of care under the traditional summary
judgment standard, it is clear that if Dr. Rosen's testimony is not disregarded, there is indeed a disputed fact issue as to both
points. In support of his motion for summary judgment, appellee presented his own affidavit as an expert witness, as well
as the affidavit of Dr. Lorence Trick. Both affidavits state that the standard of care was not breached in this case by Dr.
Hirsch, and further that Dr. Hirsch's actions were not the proximate cause of Margarita Colunga's death. If uncontroverted
by competent summary judgment evidence, these affidavits would be sufficient to support a summary judgment in favor of
the appellee. However, Dr. Rosen's deposition testimony states that he believes that Dr. Hirsch deviated from the proper
standard of care in evaluating Ms. Colunga prior to surgery. In his sworn affidavit testimony in response to the motion for
summary judgment, Dr. Rosen reiterates his understanding of the applicable standard of care and further states that he
believes that the appellee's actions were the proximate cause of Ms. Colunga's death. (4) Therefore, we cannot say that there
is no genuine issue of material fact in this case in regards to proximate cause or standard of care. See Grinnell, 951 S.W.2d
at 425.

It is true that there must be some factual underpinnings in order to prove a foundation for an expert's opinions. Schaefer v.
Texas Employers' Ins. Assoc., 612 S.W.2d 199, 202-05 (Tex. 1980). Dr. Rosen's affidavit lays out the factual
underpinnings of his opinion, specifically stating that the standard of care when a doctor receives notice of significant
coronary disease, as Dr. Hirsch did, is to perform a pre-operative pulmonary assessment. The affidavit states that the
failure of Dr. Hirsch to perform a pre-operative pulmonary assessment prevented him from learning of Ms. Colunga's
significant lung disease. The affidavit further states that anesthetics and sedatives, combined with significant lung disease,
lead to respiratory distress, which can, in turn, result in death. In light of these facts, we cannot say that either the issue of
standard of care or the issue of causation was uncontroverted, and therefore find that summary judgment under a traditional
standard was improper. 

Under a no-evidence summary judgment, the movant asserts that there is no evidence of one or more essential elements of
the nonmovant's claims upon which the nonmovant would bear the burden of proof at trial. Tex. R. Civ. P. 166a(i);
General Mills Restaurants, Inc. v. Texas Wings, Inc., 12 S.W.3d 827, 832 (Tex. App.-Dallas 2000, no pet. h.). The burden
then shifts to the respondent to present enough evidence to raise a genuine fact issue on the challenged elements. See Tex.
R. Civ. P. 166a. The trial court will be reversed if the respondent brought forth more than a scintilla of probative evidence
to raise a genuine issue of material fact. Tex. R. Civ. P. 166a(i); see also Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d
706, 711 (Tex. 1997). More than a scintilla exists when the evidence would permit reasonable and fair-minded people to
differ in their conclusions. Havner, 953 S.W.2d at 711; Zapata v. The Children's Clinic, 997 S.W.2d 745, 747 (Tex.
App.-Corpus Christi 1999, pet. denied). 

In considering this summary judgment on the issues of proximate cause and standard of care under a no-evidence standard,
we find that more than a scintilla of evidence exists on both issues, based on the previously mentioned affidavit and
deposition testimony of Dr. Rosen. Therefore, appellant carried her affirmative burden under the no-evidence motion, and
summary judgment was issued improperly.

Because we reverse the summary judgment based on the facts before us, we do not need to reach appellant's third point of
error regarding the trial court's decision to grant appellee's leave to file additional summary judgment evidence, namely the
deposition testimony of Dr. Trick. 

Conclusion

In sum, we hold that it is not necessary in every case that an expert witness in a medical malpractice suit under article 4590i
testifying as to the standard of care be in the same field as the defendant doctor. Instead, the trial court should look to
whether that expert has knowledge of the standard of care applicable in the particular circumstances of that case,
particularly where the particular issue as to which a doctor is testifying is developed in more than one field or intertwined
between two fields. The plaintiff's expert, Dr. Rosen, works closely with surgeons in determining whether to go forward
with surgery. His testimony indicated that he possessed knowledge of the standard of care that both anesthesiologists and
surgeons use in determining to go forward with surgery. His testimony was sufficient to raise a fact issue as to whether the
appellee breached the standard of care and was a proximate cause of Margarita Colunga's death. Therefore, the trial court
erred in striking the plaintiff's expert witness and erred in issuing summary judgment. We reverse the summary judgment
of the trial court, vacate the order striking the plaintiff's expert witness, and remand to the trial court.

ERRLINDA CASTILLO

Justice

Do not publish.

TEX. R. APP. P. 47.3.



Opinion delivered and filed

this 31st day of August, 2001.

1. The summary judgment motion and resulting order were based only on the claims of the appellant as they related to Dr.
Hirsch. The summary judgment did not purport to dispose of Carrillo's claims against the other defendants: Bay Area
Medical Center, Dr. Anita Martinez, and Dr. Sandra McCutchon. Appellant subsequently nonsuited her claims against Bay
Area Medical Center and Dr. Martinez. 

2. We also note that, with respect to the motion for summary judgment, appellant has waived this point of error. It was
entirely possible for the trial court to rule on the summary judgment without basing it on the motion to strike. Objections to
a motion for summary judgment must be contained in a written answer to that motion. Tex. R. Civ. P. 166a(c); McConnell
v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341-43 (Tex. 1993). Therefore, appellant was required to bring up the
issue of time limitations, with respect to the motion for summary judgment, in its written answer. This he failed to do. 

3. Dr. Rosen's qualifications include a medical degree in 1977 from the University of Texas Health Science Center, a
position as chief resident in the department of anesthesia at that institution, and board certification in pain management and
neuro-muscular thermography. In addition, he has worked as an emergency room doctor in four hospitals and has held the
position of vice president of medical staff with his currant consultant company for the last three years. Further, Dr. Rosen
states in his affidavit that he has had experience in preparing patients for surgery as a practicing anesthesiologist. 

4. Summary judgment proof comes in the form of sworn statements. An expert report does not constitute summary
judgment proof absent a jurat, which indicates that the statement's contents were sworn to be true before a notary. City of
San Juan v. Gonzales, 22 S.W.3d 69, 72 (Tex. App.-Corpus Christi 2000, no pet.). Without a jurat or authorization from
an officer, a statement is not a affidavit and thus does not constitute competent summary judgment proof. Gonzales v.
Phoenix Frozen Foods, Inc., 884 S.W.2d 587, 590 (Tex. App.-Corpus Christi 1994, no writ). Dr. Rosen's expert report
was notarized, but never sworn to; therefore, it does not constitute competent summary judgment evidence and we will not
consider it on appeal. On the other hand, depositions are proper summary judgment evidence, even without authentication.
See Tex. R. Civ. P. 166a(d) (allowing unfiled discovery products, including depositions, to be used as summary judgment
evidence, provided that certain notification requirements have been met); McConathy v. McConathy, 869 S.W.2d 341,
341-42 & 342 n.2 (Tex. 1994) (holding that summary judgment evidence admitted under rule 166a(d) need not be
authenticated, and also holding that the rule 166a(d) notification requirements are met when the deposition is attached to a
summary judgment motion or response and that motion or response relies on the deposition as support). Therefore, Dr.
Rosen's deposition, attached to appellee's motion for summary judgment and clearly relied upon by both parties for
summary judgment evidence, was proper summary judgment evidence despite its lack of authentication. Dr. Rosen's
affidavit and the curriculum vitae attached to his deposition also constituted proper summary judgment evidence, as they
contained the proper jurat.