In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-167 CV


____________________



MARY MARTHA DOWNING, Appellant



V.



MARK D. LARSON, M.D., P.A., and MARK D. LARSON, M.D., Appellees






On Appeal from the 60th District Court


Jefferson County, Texas


Trial Cause No. B-163,596






OPINION


 Mary Martha Downing sued Mark D. Larson, M.D., P.A., and Mark D. Larson,
M.D., (collectively, "Larson") for medical malpractice in the performance of an open
reduction/ internal fixation of a left orbital blow-out fracture. Downing alleged Dr. Larson
was negligent in performing two surgeries to correct the entrapment of the inferior rectus
muscle in her left eye. We hold the trial court erred in striking the plaintiff's expert
evidence, and reverse the summary judgment. 

 A "no evidence" motion for summary judgment challenged the qualification of the
appellant's expert plastic surgeon and her evidence of causation. See Tex. R. Civ. P.
166a(i). Larson argued that Martin L. Bell, M.D., is not familiar with the standard of care
applicable to a board certified plastic surgeon using a Synthes mesh to repair an orbital
blowout fracture because it has been over fifteen years since Dr. Bell has treated an orbital
blowout fracture and he has never used Synthes mesh. The appellees based the causation
argument on Dr. Bell's testimony that he does not know whether Downing has any residual
problems due to the surgeries done by Dr. Larson and on his admission that some residual
can remain even when the surgery is done properly. 

 In response, Downing submitted a telefacsimile affidavit from Dr. Bell, the doctor's
medical report and curriculum vitae, and thirty-six pages from his deposition. She also
included eight pages of Dr. Larson's deposition. The appellees obtained a favorable ruling
on their objections to Downing's summary judgment evidence, and the trial court struck
the opinions and testimony of Dr. Bell, effectively leaving the plaintiff without any
evidence with which to satisfy Rule 166a(i). On appeal, Downing argues that the trial
court erred in striking her evidence. 

 The appellees raised six objections to Downing's evidence. First, Larson objected
to a copy of the affidavit. A duplicate is admissible to the same extent as an original
unless a question is raised as to the authenticity of the original or circumstances would
make it unfair to admit the duplicate. Tex. R. Evid. 1003. Downing supplied the original
affidavit in response to Larson's objection to the facsimile. Therefore, the exclusion of
the appellant's summary judgment evidence is not affirmable on this ground.

 Second, the appellees contend Dr. Bell's opinions were conclusory because they do
not reveal his reasoning, the proper standard of care, how the standard was breached, and
how the breach was a cause of damages. To raise a fact issue sufficient to defeat a
no-evidence summary judgment in a medical malpractice case, the controverting expert
evidence must identify the standard of care, establish the expert's familiarity with that
standard, and explain why the treatment rendered by the doctor breached the applicable
standard of care. Silvas v. Ghiatas, 954 S.W.2d 50, 53 (Tex. App.--San Antonio 1997,
writ denied). In his report and in deposition, Dr. Bell opined that in the first surgery, Dr.
Larson failed to completely delineate the full extent of the fracture and to dissect and cover
the posterior aspect of the fracture with the implant, so as to prevent residual or recurrent
entrapment of the orbital muscle. The report observes Downing's post-operative
symptoms and the CT scan that revealed a "persistent bony defect behind the metal plate
with continued partial entrapment of muscle." Dr. Bell's report also expresses his opinion
that in the second surgery, Dr. Larson dissected the orbital floor more extensively and
observed no entrapment, but he failed to replace the implant into the orbital floor to protect
against recurrent entrapment post-operatively. The report notes that Dr. Larson "did not
note any entrapment of muscle." Dr. Bell describes a third surgery by a new doctor, who
"encountered dense scar tissue along the orbital floor and around the inferior rectus
muscle" and "discovered that the fractured bone fragments in the back of the orbit were
not separated, and so he removed some fragments of bone." He reports that the third
surgery substantially improved the appellant's vision. Dr. Bell explained with particularity
what the standard of care was and explained how Dr. Larson failed to meet it and how
damage resulted. Thus, the evidence is not conclusory for the reasons asserted by the
appellees.

 Third, Larson claimed a particular deposition excerpt consisted of hearsay because
the opinion of Dr. Bell was based upon the opinion of Dr. Rudasill, a person whose
affidavit was not attached. The deposition excerpt consists of Dr. Bell's testimony that he
had been apprised of Dr. Rudasill's report that day, and that he had not been apprised of
the report when he prepared his expert report, but that the Rudasill report suggests
Downing's injury is permanent. Downing supplied Dr. Rudasill's report in a court-authorized supplement. Therefore, the exclusion of the appellant's summary judgment
evidence is not affirmable on this ground. 

 Fourth, Larson objected that certain opinions articulated by Dr. Bell during the
deposition were inadmissible because they had been adduced through leading questions by
Downing's attorney. Counsel for Larson did not object to the questions on the ground that
they were leading, as required by rule. Tex. R. Civ. P. 199.5(e). On appeal, Larson
suggests that counsel had agreed that an objection to form would cover all objections in the
depositions. No such agreement appears in the record, and the appellees do not cite us to
where it might be located. The exclusion of the appellant's summary judgment evidence
is not affirmable on this ground. 

 Fifth, Larson challenged Dr. Bell's qualifications as an expert. The appellees
contend Downing failed to meet the burden of proving that Dr. Bell meets the requirements
of Section 14.01, Article 4590i of the Texas Revised Civil Statutes. That article, since
repealed, provided as follows, in pertinent part:

 (a) In a suit involving a health care liability claim against a physician
for injury to or death of a patient, a person may qualify as an expert witness
on the issue of whether the physician departed from accepted standards of
medical care only if the person is a physician who:


 (1) is practicing medicine at the time such testimony is
given or was practicing medicine at the time the claim arose;


 (2) has knowledge of accepted standards of medical care
for the diagnosis, care, or treatment of the illness, injury, or
condition involved in the claim; and


 (3) is qualified on the basis of training or experience to
offer an expert opinion regarding those accepted standards of
medical care.


 (b) For the purpose of this section, "practicing medicine" or "medical
practice" includes, but is not limited to, training residents or students at an
accredited school of medicine or osteopathy or serving as a consulting
physician to other physicians who provide direct patient care, upon the
request of such other physicians.


 (c) In determining whether a witness is qualified on the basis of
training or experience, the court shall consider whether, at the time the claim
arose or at the time the testimony is given, the witness:


 (1) is board certified or has other substantial training or
experience in an area of medical practice relevant to the claim;
and 

 (2) is actively practicing medicine in rendering medical
care services relevant to the claim.

 

See Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 2, sec. 14.01, 1995 Tex. Gen. Laws
985, 988, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex.
Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.401
(Vernon Supp. 2005)). 

 Dr. Bell's curriculum vitae reveals that he is a 1967 cum laude graduate of Boston
University School of Medicine; that he was on staff at Tulane University Hospital from
1975 to 1997; that since 1997 he has been on staff at a hospital in Arizona; that he is
currently an assistant clinical professor of plastic surgery at Tulane; that he holds
certifications from the American Board of Surgery (1974), the American Board of Plastic
and Reconstructive Surgery (1976), and the American Board of Cosmetic Surgery (1986);
that he holds medical licenses in Louisiana, Massachusetts, California, Arizona, and the
Netherlands; that he was formerly chief of plastic surgery at two medical centers; and that
he is currently practicing in Scottsdale, Arizona. Together with his affidavit and
deposition testimony, the curriculum vitae establishes that Dr. Bell is a licensed physician,
board certified in plastic and reconstructive surgery, and actively practicing medicine when
the claim arose. He expressed knowledge of the accepted standards of medical care for
the diagnosis, care, or treatment of the injury involved in the claim. Thus, the trial court's
ruling is not sustainable upon the ground that Dr. Bell failed to meet the criteria of Section
14.01, Article 4590i.

 Lastly, the appellees contend Dr. Bell has not done the surgery performed by Dr.
Larson in over fifteen years, has never performed the surgery using the mesh used by Dr.
Larson, and admitted there have been changes in the procedure since the time when he was
performing the surgeries. In the course of his deposition, Dr. Bell explained that he does
not use the brand of implant used by Dr. Larson; he uses a silicone implant with a Dacron
mesh. He has not personally performed the surgery in fifteen years. He explained 

 Like many plastic surgeons, as you progress in practice, you tend to
go from reconstructive surgery into cosmetic surgery. And since facial
fractures tend to be emergency cases at all hours of the day and night, you
get younger associates who come in with you and they do it and that's
basically the progression of my practice. 


Dr. Bell explained the changed procedure referred to by the appellees. The practice at that
time was to wait two weeks to perform the surgery; now, the consensus is to act as quickly
as possible if there is actual entrapment. Dr. Bell explained that doctors in several
specialties treat orbital fractures, and that oculoplastic surgeons who are ophthalmologists
and oral maxillofacial surgeons tend to intervene earlier than plastic surgeons. 

 The appellees argue Dr. Bell fails to meet the Section 14.01 criteria that the expert
be "actively practicing medicine in rendering medical care services relevant to this claim"
because he has not personally performed the operation. Section 14.01 does not require that
the expert personally perform the operation in question. In fact, the statute expressly
provides that teaching and consultation with physicians providing direct care constitute
practicing medicine. 

 The appellees argue, "Synthes mesh implants are made by a different material than
the type of implants used by Dr. Bell and have different mesh, thus requiring different
standards of care as to the usage, placement and removal." According to Dr. Bell,
"Synthes" is merely a brand name, and Dr. Bell testified that he has used numerous
implants. We find no summary judgment evidence in the record supporting an argument
that there is a significant distinction between the two implants, or that a different standard
of care would apply if that particular brand of implant were used.

 The test for admissibility of an expert's testimony is whether the proponent
established that the expert possesses knowledge, skill, experience, training, or education
regarding the specific issue before the court which would qualify the expert to give an
opinion on that particular subject. Roberts v. Williamson, 111 S.W.3d 113, 121 (Tex.
2003) (quoting Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996)). Downing's expert
had extensive experience and expertise in the procedure performed by Dr. Larson, was
actively practicing in the pertinent specialty when the treatment was provided and at the
time he provided the affidavit, and met the criteria expressed in Article 4590i, Section
1401, and Tex. R. Evid. 702. Thus, none of the grounds asserted for striking the
appellant's summary judgment evidence were meritorious. We hold striking the plaintiff's
expert's evidence was an abuse of the trial court's discretion. Issue two is sustained. 

 The judgment of the trial court is reversed. We remand the case to the trial court
for further proceedings consistent with this opinion.

 REVERSED AND REMANDED.






 

 ____________________________

 STEVE MCKEITHEN

 Chief Justice



Submitted on October 21, 2004

Opinion Delivered December 22, 2004


Before McKeithen, C.J., Burgess and Gaultney, JJ.



DISSENTING OPINION



 In determining whether an expert is qualified to offer an expert opinion, the trial
court serves as the evidentiary gatekeeper. See E.I. du Pont de Nemours & Co. v.
Robinson, 923 S.W.2d 549, 553-54, 556-58 (Tex. 1995). In cases like this, the legislature
has specified that the trial court shall consider whether a medical expert "is actively
practicing medicine in rendering medical care services relevant to the claim." (1) It is
undisputed that Dr. Bell is not currently performing the type of surgery involved in this
claim. It is not an abuse of discretion for the trial court to rely on a consideration
mandated by statute. 

 Rather than immediately granting the no-evidence summary judgment, the trial court
could have provided the plaintiff an opportunity to replace the witness with someone whose
expertise is current. See Tex. R. Civ. Proc. 166(a)(i). Appellant raised no issue at the
trial court or on appeal requesting that relief. I therefore respectfully dissent from the
reversal of the trial court's judgment. 



 __________________________

 DAVID GAULTNEY

 Justice


Dissent Delivered 

December 22, 2004
1. See Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 2, sec. 14.01, 1995 Tex. Gen.
Laws 985, 988, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003
Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. Code Ann. §
74.401 (Vernon Supp. 2005)).